IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [State ex rel.] Whirlpool Corporation, | : | |
| Relator, | : | |
| v. | : | No. 22AP-361 |
| Keith Rice and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

———————

D E C I S I O N

Rendered on August 27, 2024

———————

**On brief:** *Bugbee & Conkle, LLP*, *Robert L. Solt, IV*, *Mark S. Barnes*, and *Gregory B. Denny*, for relator.

**On brief:** *The Bainbridge Firm, LLC*, *Lauren N. Osgood*, and *Jacob B. Brandt*, for respondent Keith Rice.

**On brief:** *Dave Yost*, Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

———————

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LELAND, J.

{¶ 1} Relator, Whirlpool Corporation, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding Whirlpool committed a violation of a specific safety requirement ("VSSR"). Alternatively, Whirlpool seeks a writ of mandamus ordering the commission to vacate its order denying Whirlpool's motion for rehearing and to schedule a rehearing on the VSSR application filed by respondent Keith Rice.

**I. Facts and Procedural History**

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. Having independently reviewed the record and the magistrate's decision, we adopt the magistrate's findings of fact as our own.

{¶ 3} Of particular relevance here, the magistrate made the following findings of fact. Whirlpool hired Rice as a maintenance worker responsible for repairing broken equipment in its plant. On November 28, 2017, upon learning multiple conveyor lines were not operational, Rice proceeded to walk the lines in order to identify the problem area. During his investigation, Rice testified he came to a point that required him to cross over a conveyor. The testimony of a safety manager at Whirlpool's plant confirmed a maintenance employee such as Rice was required to cross the conveyor at this point. The designated crossing point consisted of a ladder affixed to either side of the conveyor line, and atop each fixed ladder was a small platform welded to the conveyor's side. A conduit pipe ran above the conveyor, providing a handhold for staff as they step from one fixed platform to the other. Upon reaching this crossing point, Rice climbed the ladder, stepped on an immobile slat on the conveyor, and leapt to the other side. He landed on the fixed platform of the far side but caught his foot in an emergency cord, causing him to fall to the ground and injure his knee. Later, after Rice's injury, Whirlpool installed U-shaped handrails along the sides of the ladders and platforms and repositioned the emergency stop cord underneath the fixed platform.

{¶ 4} Rice obtained workers' compensation benefits for his knee injury and other related complications. On October 22, 2019, Rice filed an application for an additional award for VSSR in a workers' compensation claim, eventually narrowing the alleged violations to Ohio Adm.Code 4123:1-5-05(C)(3). After a hearing, the commission's staff hearing officer ("SHO") on October 15, 2021 issued an order granting Rice's application for an additional award for VSSR. The SHO concluded Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3) because the platform used to cross the conveyor did not have standard guard railing or toeboards. Whirlpool filed a motion for rehearing, but on December 29,

2021, the commission denied the motion. On June 22, 2022, Whirlpool filed a complaint seeking a writ of mandamus.

{¶ 5}  The magistrate's decision concluded that because the top step or platform did not itself cross the conveyor, Ohio Adm.Code 4123:1-5-05(C)(3) did not apply and thus there was no obligation for Whirlpool to install guard railing or toeboards. The magistrate reasoned that such safety precautions are required only for platforms that cross over a conveyor—not platforms merely adjacent to one. Accordingly, the magistrate recommends this court grant the request for a writ of mandamus and return the case to the commission for further proceedings.

## II. Objections

{¶ 6}  All parties objected to the magistrate's decision. Whirlpool filed the following objections:

> I. The magistrate erred in failing to grant a full writ of mandamus ordering the commission to vacate its order and deny the VSSR award and application.
>
> II. The magistrate erred by finding the commission did not abuse its discretion with respect to whether there is "some evidence" that [Rice] was "required" to cross the conveyor.
>
> III. The magistrate erred in recommending a remand to the commission to consider Whirlpool's impossibility argument.

{¶ 7}  The commission filed the following objections:

> I. The commission's determination that Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3) and that the violation was the proximate cause of Rice's severe injuries was supported by evidence in the record.
>
> II. The commission appropriately considered and rejected the employer's defense of impossibility.
>
> III. The magistrate's recommendation to grant a writ of mandamus is based upon an improper review and re-weighing of the evidence.

{¶ 8}  Rice filed the following objection:

> The magistrate erred in concluding that the Commission's interpretation of Ohio Adm.Code 4123:1-5-05(C)(3) was

patently illogical and inconsistent with the plain meaning of the rule.

## III. Analysis

{¶ 9} In ruling on objections to a magistrate's decision, this court conducts an independent review to ensure the magistrate "properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). We "may adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b). In the present case, the parties object not to any particular finding of fact, but rather the magistrate's conclusions of law and the application of the facts to the law.

{¶ 10} We begin with Rice's sole objection arguing the magistrate incorrectly interpreted Ohio Adm.Code 4123:1-5-05(C)(3). The relevant version of Ohio Adm.Code 4123:1-5-05(C)(3) stated: "Safe means of passage. Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided." The magistrate concluded the commission abused its discretion in interpreting Ohio Adm.Code 4123:1-5-05(C)(3) because the platform from which Rice fell was adjacent to, but did not itself cross, the conveyor. The magistrate reasoned Ohio Adm.Code 4123:1-5-05(C)(3) applies only to platforms that cross over the conveyors, and not to those simply affixed to the side of a conveyor. The magistrate's interpretation of this rule, however, belies the reality of the present case. The platform from which Rice fell was not merely adjacent to the conveyor by happenstance; its sole reason for being was to facilitate employees' conveyor crossings. Whirlpool affixed the ladders and the platforms to the conveyor for the purpose of allowing its employees to cross the conveyor at that point, and then required Rice to cross there. Thus, while all parties agree the platform at issue was located adjacent to rather than directly over the conveyor, Whirlpool was nevertheless required to comply with Ohio Adm.Code 4123:1-5-05(C)(3) because it constructed the platform "[w]here employees are required to cross conveyors." We find no abuse of discretion in the commission's finding that Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3) and thereby committed a VSSR. Accordingly, Rice's sole objection is sustained.

{¶ 11} Next, Whirlpool's first objection argues the magistrate erred in failing to vacate the VSSR award and grant a full writ of mandamus. Whirlpool believes Ohio Adm.Code 4123:1-5-05(C)(3) does not apply to the present case because Rice had already

crossed over the conveyor when he fell and injured his knee. In Whirlpool's reasoning, the rule only applies during the passage of an employee over a conveyor, and, since Rice had passed completely over the conveyor at the time of his injury, the rule no longer applied and thus this particular VSSR could not be the proximate cause of Rice's injury. Ohio Adm.Code 4123:1-5-05(C)(3) as relevant to this case began: "Safe means of passage," and was immediately followed by "[w]here employees are required to cross conveyors." Nowhere does the rule limit its application to the airspace above conveyors. Rather, it employs broad language requiring employers to provide safe passage for their employees to cross conveyors. Whirlpool provided a means to cross the conveyor, but it failed to meet the rule's safety standards and, as a result, Rice tripped and fell while in the process of crossing the conveyor. Though he was not directly over the conveyor at the time he fell, Rice would not have needed to leap onto a small platform if Whirlpool had provided the requisite safety measures in the first place. Whirlpool's interpretation of Ohio Adm.Code 4123:1-5-05(C)(3) would lead to absurd results: it would find a VSSR in the case of employees falling backwards and injuring themselves on the conveyor, but no VSSR in the case of employees like Rice falling forwards and injuring themselves on the ground. In either case, the proximate cause of the injury was identical—Whirlpool's failure to provide guard railing and toeboards for employees to cross conveyors. At the very least, the commission's determination that Whirlpool's failure to comply with Ohio Adm.Code 4123:1-5-05(C)(3) proximately caused Rice's injury was supported by some evidence in the record, and we thus find no abuse of discretion. Accordingly, finding no error in the decision of the magistrate to not vacate the VSSR award, Whirlpool's first objection is overruled.

{¶ 12} The commission's first objection avers evidence in the record supported the commission's order finding Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3) and that the violation proximately caused Rice's injuries. Having already sustained Rice's objection and overruled Whirlpool's first objection, we have resolved the matters raised in this objection. Accordingly, the commission's first objection is sustained.

{¶ 13} Whirlpool's second objection contends there was not "some evidence" that Rice was required to cross the conveyor and asserts the magistrate erred by finding otherwise. Importantly, "[w]e generally defer to the commission's expertise in evidentiary

matters and do not substitute our judgment for the commission's." *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 273, 2019-Ohio-3341, ¶ 30, citing *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, ¶ 20. "Our function is to discern 'whether there is some evidence in the record to support the commission's decision,' not to 'second-guess the commission's evaluation of the evidence.' " *Id.*, quoting *State ex rel. Black v. Indus. Comm.*, 137 Ohio St.3d 75, 2013-Ohio-4550, ¶ 22. We agree with the magistrate that the testimony of Whirlpool's safety manager, Christopher Zalewski, constituted "some evidence" in support of the commission's finding that Rice was required to cross the conveyor at that particular point. Accordingly, Whirlpool's second objection is overruled.

{¶ 14} The commission in its second objection claims it already considered and rejected Whirlpool's defense of impossibility, so the magistrate erred by recommending we issue a remand for the commission to reconsider that issue. As noted by the magistrate's decision, the commission found Whirlpool installed handrails after Rice's injury, and the commission determined this undercut Whirlpool's impossibility defense. While the magistrate's decision acknowledges the commission considered the impossibility defense, it held the commission was operating under an incorrect interpretation of Ohio Adm.Code 4123:1-5-05(C)(3) which demanded a reassessment. However, there is no need for remand on this issue. Having already found the commission correctly interpreted Ohio Adm.Code 4123:1-5-05(C)(3), it follows that it addressed the impossibility question using the proper legal standard. Accordingly, the commission's second objection is sustained.

{¶ 15} Whirlpool's third objection argues the magistrate erred in recommending this court remand the case to the commission to consider Whirlpool's impossibility defense. In sustaining the commission's second objection, however, we concluded the commission already dealt with the impossibility defense and determined there was no basis to remand the case on that issue. Accordingly, Whirlpool's third objection is rendered moot.

{¶ 16} Finally, the commission's third objection contests the magistrate's recommendation to grant a writ of mandamus, arguing it was improperly based on the magistrate's reweighing of the evidence. This objection is no longer relevant as no writ will issue from this court. Accordingly, the commission's third objection is rendered moot.

**IV. Conclusion**

{¶ 17} Upon review of the magistrate's decision, an independent review of the record, and due consideration of all objections to the magistrate's decision, we find the magistrate has properly determined the facts but, in some instances, misinterpreted the law. For the reasons explained above, we sustain Rice's sole objection and the commission's first and second objections; we overrule Whirlpool's first and second objections; and we render moot the third objection of both Whirlpool and the commission. We deny Whirlpool's request for a writ of mandamus and leave intact the commission's order that found Whirlpool committed a VSSR.

*Objections sustained in part, overruled in part,*
*and rendered moot in part*;
*writ of mandamus denied.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

_____

APPENDIX A

IN IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Whirlpool Corporation, | : | |
| Relator, | : | |
| v. | : | No. 22AP-361 |
| Keith Rice et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on March 22, 2024

*Bugbee & Conkle, LLP, Robert L. Solt, IV, Mark S. Barnes*, and *Gregory B. Denny*, for relator.

*The Bainbridge Firm, LLC, Lauren N. Osgood*, and *Jacob B. Brandt*, for respondent Keith Rice.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 18} Relator Whirlpool Corporation ("Whirlpool") seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order finding that Whirlpool committed a violation of a specific safety requirement ("VSSR"). In the alternative, Whirlpool seeks a writ of mandamus ordering the commission to vacate its order denying Whirlpool's motion for rehearing and to schedule a rehearing on the VSSR application filed by respondent Keith Rice.

## I. Findings of Fact

{¶ 19} 1. Rice was injured on November 28, 2017 in the course of and arising out of his employment with Whirlpool as a maintenance worker. A Bureau of Workers' Compensation ("BWC") first report of an injury, occupational disease or death ("FROI" or "FROI-1") form was filed on December 28, 2017. In the FROI form, Rice's injury was described as follows: "He reported he fell about 3 feet off a platform at work when he tripped over a cable. He reported he was lifting his right foot and twisted and fell on the ground. He reports he landed on his right side with his right knee taking the brunt of the impact." (Stip. at 363.) Rice's workers' compensation claim was ultimately allowed for the following conditions: right knee medial meniscus tear; right knee contusion; substantial aggravation of pre-existing right knee osteoarthritis; right knee abscess; adjustment disorder with mixed anxiety and depressed mood; post surgical pruritic rash right knee; right lower extremity complete above knee amputation; left knee lateral meniscus tear; substantial aggravation of pre-existing left knee osteoarthritis.

{¶ 20} 2. Rice submitted an application for additional award for violation of specific safety requirement in a workers' compensation claim ("IC-8/9"), which he signed on October 22, 2019. Rice listed violations of Ohio Adm.Code 4123:1-5-02(F)(1), Ohio Adm.Code 4123:1-5-19(C)(2)(b), and Ohio Adm.Code 4123:1-5-05(C)(3). Rice provided the following description of how the injury occurred: "Was crossing over conveyor when I got to the other side to go down the steps. My feet got caught under a wire causing me to fall off the top step to the floor under me." (Stip. at 1.)

{¶ 21} 3. The BWC's Safety Violations Investigations Unit ("SVIU") released a report of investigation dated January 28, 2020. The SVIU investigator stated that "[a]ccording to the information obtained during the investigation of this VSSR claim, [Rice] was hired by Whirlpool, an appliance manufacturer, as a maintenance technician, responsible for performing maintenance to assigned company machinery." (Stip. at 4.) On the date of Rice's injury, he "was attempting to cross over a powered conveyor * * * when his foot became caught in an emergency stop cord * * * causing him to fall to the floor below." (*Id.*)

{¶ 22} According to information obtained from Whirlpool, the equipment involved in the incident "consisted of an electrically powered, Omni Metalcraft Corporation manufactured chain driven line roller," which was "10 feet-4 1/4 feet in length by 46 inches wide by 28 1/4 inches in height." (*Id.*) On either side of the conveyor was a "small affixed

ladder," which was "equipped with two risers and a top step, located even with the roller frame." (*Id.*) The area described in the report as the "top step" measured 24 inches by 14 1/4 inches; each riser measured 20 1/2 inches by 2 1/2 inches. (*Id.*) On the date of the incident giving rise to Rice's injury, "a conduit pipe * * * was positioned across the width of the conveyor frame, utilized to provide stability for staff as they cross over the conveyor." (*Id.*) The SVIU report included photographs of conveyor and ladders. After Rice's injury, Whirlpool installed "U-shaped hand rails * * * along the side of the affixed ladder leading to the conveyor" and "re-routed the emergency stop cord under the top platform of the affixed ladder." (Stip. at 5.)

{¶ 23} The SVIU investigator interviewed Rice, who provided a statement that was attached to the SVIU report. In the report, Rice described his injury as follows:

> Prior to my injury, I was given the task of responding to the conveyor line (between line 7 and line 9) due to the line being shut down at the Whirlpool facility in Marion, Ohio. * * * I then walked towards the conveyor where a make-shift staircase had been previously installed. I then walked up the staircase. Once I was positioned on the top riser, I then grabbed ahold of the u-shaped conduit line to steady myself as I passed over the conveyor. I had to leap over the conveyor to get to the opposite side. Upon landing on the opposite side risers, my right foot became caught under the emergency stop cord that had been installed along the side of the conveyor. I then lost my balance and fell to the side and landed on the steel floor.

(Stip. at 9.)

{¶ 24} 4. At the request of Whirlpool's counsel, Richard L. Barcum produced a report dated October 30, 2020 and testified at the VSSR hearing. Barcum provided an opinion regarding the applicability of the Ohio Administrative Code sections at issue in the VSSR application based on a site visit conducted June 5, 2020, a review of the BWC's January 28, 2020 SVIU report, and review of the Ohio Administrative Code. Barcum opined that Ohio Adm.Code 4123:1-5-02(F)(1) was not applicable, Ohio Adm.Code 4123:1-5-05(C)(2)(b) was not applicable, and the requirements of Ohio Adm.Code 4123:1-5-05(C)(3) were met.

{¶ 25} 5. In a letter dated June 18, 2021 addressed to the commission, counsel for Rice objected to Barcum's October 30, 2020 report.

{¶ 26} 6. A commission staff hearing officer ("SHO") conducted a hearing on the application for VSSR award on June 22, 2021. At the hearing, Rice dismissed the alleged violations of Ohio Adm.Code4123:1-5-02(F)(1) and Ohio Adm.Code 4123:1-5-19(C)(2)(b).

{¶ 27} 7. Rice testified at the VSSR hearing, that he started working for Whirlpool in 1997 and began working in the maintenance department in 2010. At the Marion, Ohio plant where Rice worked, Whirlpool manufactured dryer units. As an employee in the maintenance department, Rice testified he was responsible for repairing any equipment that was broken in the plant. On November 28, 2017, Rice received a call that several conveyor production lines were not operational. Upon receiving the call, Rice started troubleshooting. Rice testified that he went down all the lines, checking to make sure that there were no issues, and then proceeded underground. Finding no problems, Rice proceeded to an area he described as between "lines 7 and 9" and attempted to cross a conveyor. (Stip. at 217-18.)

{¶ 28} Rice stated that he "went up to a stairs and on a platform that's a still floor," he began crossing the moving conveyor. (Stip. at 218.) While he was crossing the conveyor, he stepped with his left foot on still slats running across the conveyor at the crossing point between two ladders, held onto a conduit pipe over the conveyor, and then "did a leap across * * * to the other side." (*Id.*) Rice landed on the platform on the opposite side of the conveyor, with the toes of right foot touching the platform. (Stip. at 288.) At the same time, he became tangled in a red stop cord running across the platform. Rice testified that the stop cord was "maybe 6 inches, 8 inches above that step." (Stip. at 218.) Rice described what happened next as follows: "When I got caught in it I was trying to just grab whatever I could try to grab but I fell to the opposite side of that conduit that they use as so-called railing but we, it's conduit. And I went to the opposite side so I didn't have nothing to catch or grab a hold of. So, I fell straight down to the floor on my, and my knee is the first thing that took the impact." (Stip. at 288-89.) Rice stated that the conveyor turned off when he tripped over the cord. (Stip. at 223.)

{¶ 29} On cross-examination, Rice stated that "[a]s soon as I crossed that I lifted my leg up to go down the steps and the process of going over the conveyor to go down the steps that is when I gotten entangled into that wire." (Stip. at 242.) Rice agreed that occurred when he was "on the top platform of * * * the three steps on the other side." (*Id.)*

{¶ 30} 8. At the VSSR hearing, Christopher Zalewski, environmental health and safety manager for the Marion Whirlpool plant was asked who would need to cross the conveyor at the location where Rice was injured. Zalewski responded that "typically it is only used when we have an issue with our conveyor system." (Stip. at 252.) Zalewski agreed with the statement: "[I]t was when maintenance needed to get back there to fix something with the conveyor system is when an employee, generally a maintenance employee would have to cross over that location." (Stip. at 273-74.) Based on his review of Whirlpool's investigation report, Zalewski stated that it was his understanding that the accident occurred when "Rice tripped over the emergency stop cord causing him to fall." (Stip. at 254.) Zalewski stated that the emergency stop cord was "located on the conveyor system just above the top step." (Stip. at 255.) Following Rice's injury, Zalewski stated that Whirlpool "rerouted the emergency stop so it went underneath the set of steps and we also installed, I guess you could say U shaped handrails on both sides of the conveyor system and both sides of the steps." (*Id.*) Zalewski stated there was "no fixed platform or fixed handrail that was placed over the conveyor system * * * due to the location of where this conveyor is there's not the height required to allow the material to pass through." (*Id.*)

{¶ 31} 9. Additionally, Barcum, who described himself as a "Board certified safety professional, a Board certified industrial hygienist and a Board certified industrial hazardous materials manager" with "approximately 30 years of experience," provided testimony at the VSSR hearing regarding the investigation he performed at the request of Whirlpool. (Stip. at 256.) Based on his investigation, Barcum provided the following description of the incident giving rise to Rice's injury:

> Rice was called up to the second level to do some work on, related to the conveyor system. He climbed up the first step without incident. He crossed over the conveyor without incident. And as he was starting to descend these stairs after crossing over the conveyor his foot caught on an emergency stop cord which caused him to fall approximately 28 inches to the ground.

(Stip. at 258-59.)

{¶ 32} 10. On October 15, 2021, the SHO issued an order granting the application for additional award for VSSR. In making the findings in the order, the SHO relied on Rice's description of the industrial injury as well as the BWC's SVIU report. The SHO found the industrial injury occurred while Rice was crossing a power-driven conveyor. The SHO

found the "conveyor at issue had metal plates installed between the powered rollers of the conveyor" and that the "metal plates were used to step on while crossing the conveyor." (Stip. at 305.) The SHO found the "powered rollers on the conveyor move the dryer machines which were run down this conveyor line." (*Id.*) At the time of the industrial injury, the SHO found that "there were no standard guard rails on either side of the two metal platforms, which were affixed to either side of the powered conveyor." (*Id.*) After the industrial injury, the SHO found that "metal yellow u-shaped hand rails were installed" by the Employer as depicted in the BWC SVIU photographs. (*Id.*)

{¶ 33} The SHO found Rice was called to repair several main conveyor lines that had stopped running. At the conveyor at which Rice's injury occurred, the SHO found that Rice "was crossing the conveyor belt in order to look for the cause for the stoppage of the main conveyor lines." (*Id.*) The SHO described Rice's actions in crossing the conveyor, stating that Rice "climbed up two rungs of a metal fixed ladder" and thereafter "stepped up onto a metal platform, which was attached to the top of the fixed ladder" and "welded to the side of the powered conveyor." (*Id.*) After stepping on top of the metal platform, the SHO found Rice "grabbed a 1 1/4 inch conduit pipe, which was over his head and which ran above and across the running powered conveyor," and then "stepped across the running conveyor to the opposite side of the conveyor," at which location there was "an identical metal platform on top of a fixed ladder." (*Id.*) As Rice "was stepping forward onto the top of the metal platform," the SHO found that Rice's "foot became caught under the emergency wire/cord * * * which traversed the metal platform width and was approximately 6 to 8 inches above the top of the metal platform per the Injured Worker's testimony at the hearing." (*Id.*) The SHO found that Rice "lost his balance due to tripping over the emergency wire/cord" and then "fell forward, falling off the metal platform," which was "approximately 28 inches below the metal platform," and then "landed on the floor on his right knee." (*Id.*)

{¶ 34} The SHO found Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3), stating that "the platform, which the Injured Worker fell from did not have standard guard railing or toeboard at the time of the industrial injury" and that "standard hand railing would have prevented this industrial injury." (Stip. at 306.) The SHO addressed Whirlpool's argument that the "conduit pipe was a handrail" as follows:

> The Staff Hearing Officer finds that the conduit pipe * * * was a handrail but was not a standard guard rail as required in Ohio Adm.Code 4123:1-5-05(C)(3) and as defined by Ohio

Adm.Code 4123:1-5-01(B)(131), which defines a standard guard rail as a substantial barrier constructed per paragraph (E) of Ohio Adm.Code 4123:1-5-02. * * *

There was no standard guard railing provided at the time of this industrial injury on [November 28, 2017]. The elevated platform did not have a standard guard rail in place which was a substantial barrier and which had a top and intermediate rail to protect the Injured Worker or any person from falling from the platform. Since the industrial injury, the Employer has installed standard guard railing on either side of the platforms.

(Stip. at 306.)

{¶ 35} With regard to the site at which the injury occurred, the SHO made the following findings:

The metal platform affixed to the top of the fixed ladder and attached to the conveyor equipment is found to be a "platform" per Ohio Adm.Code 4123:1-5-01(B)(96). The Staff Hearing Officer finds that the platform, which [Rice ] fell from on [November 28, 2017] at work, was "fixed" as it was permanently attached to the conveyor equipment.

The Staff Hearing Officer finds the metal platform was attached to the fixed ladder per Ohio Adm.Code 4123:1-5-01(B)(80)(c) * * *. The ladder * * * is found to be a fixed ladder since the ladder is attached to the floor and is attached to the working platform, which is attached to the conveyor equipment.

The conduit pipe * * * was a handrail by the * * * definition [in Ohio Adm.Code 4123:1-5-01(B)(73)]. This pipe was a single pipe attached and coming from the floor and crossing above the powered conveyor. However, this conduit pipe was not a standard guard railing system as required by Ohio Adm.Code 4123:1-5-05(C)(3).

The Staff Hearing Officer does not find the fixed platform was equipped with standard guard railing at the time of the [November 28, 2017] industrial injury as required by Ohio Adm.Code 4123:1-5-05(C)(3). There was no "standard guard railing" present at the time of the [November 28, 2017] industrial injury. The Staff Hearing Officer finds that the Employer's failure to comply with Ohio Adm.Code 4123:1-5-05(C)(3) was the proximate cause of the Injured Worker's industrial injury.

(*Id.*) The SHO noted Whirlpool's argument that the standard guard railing "was not necessary since the elevated platform was only 28 inches off the ground and not four feet

or more off the ground" and that "standard guard railing over the conveyor would have impaired the work being performed per Ohio Adm.Code 4123:1-5-02(D)." In response to Whirlpool's argument, the SHO made the following findings:

> The Staff Hearing Officer rejects this argument since Ohio Adm. Code 4123:1-5-02(D) also states that elevated platforms regardless of height located adjacent to machinery shall be provided with standard guard railing and toeboards.
>
> The Staff Hearing Officer finds that standard guard railing of the platform (which the Injured Worker fell from) would not impede the work being performed. Furthermore, the standard guard railing compatible with Ohio Adm.Code 4123:1-5-01(B)(131) were installed after this industrial injury by the Employer.

(Stip. at 307.)

{¶ 36} Furthermore, the SHO addressed Barcum's October 30, 2020 report as follows:

> The Staff Hearing Officer rejects the [October 30, 2020] report * * * from Safety and Industrial Hygienist of Cardinal Compliance Consultants Mr. Richard L. Barcum. Mr. Barcum was physically present at the time of the BWC Safety Violation Investigation of this claim at the request of [Whirlpool's attorney] and was requested to complete a report and opinion relative to the Injured Worker's IC-8/9 Application. The Staff Hearing Officer finds that Mr. Barcum rendered legal opinions and refers to legal authority, specifically, Ohio Adm. Code sections related to the facts of this particular claim. Mr. Barcum's report provides legal analysis of the Ohio Adm. Code sections, applies the Ohio Adm. Code to the facts of this claim and renders a legal opinion from an individual who is not an attorney. Based upon these facts, the [October 30, 2020] report of Mr. Barcum is rejected and is not considered in its entirety.

(*Id.*)

{¶ 37} The SHO found "Ohio Adm.Code 4123:1-5-05(C)(3) applies to the circumstances of the employment and the work which was being performed at the time of the industrial injury" and found that such section "was violated by non-compliance with its mandates by the Employer." (*Id.*) The SHO found the "violation of Ohio Adm.Code 4123:1-5-05(C)(3) was the proximate cause of the Injured Worker's industrial injury." (*Id.*) The SHO found Whirlpool's "failure to provide standard guard railing to the fixed platform at

the time of this [November 28, 2017] industrial injury was the proximate cause of the Injured Worker's work injury." (*Id.*) The SHO concluded as follows:

> The Staff Hearing Officer finds that this industrial injury resulted in significant physical injuries to the Injured Worker. The Injured Worker underwent multiple surgeries to his right lower extremity due to this industrial injury, which eventually led to an above the knee right leg amputation. Due to the seriousness of this industrial injury, the failure of the Employer to provide standard guard railing at the time of this industrial injury, the Staff Hearing Officer awards the maximum percentage due to the violation of this specific safety violation.

(*Id.*) Therefore, the SHO ordered that an additional award of compensation be granted in the amount of 50 percent of the maximum weekly rate.

{¶ 38} 11. Whirlpool filed a motion for rehearing from the SHO's October 15, 2021 order. The motion for rehearing was denied by order dated December 29, 2021.

{¶ 39} 12. On June 22, 2022, Whirlpool commenced this mandamus action by filing its complaint.

## II. Discussion and Conclusions of Law

{¶ 40} Whirlpool asserts entitlement to a writ of mandamus because the commission abused its discretion by granting the application for VSSR award.

### A. Requirements for Mandamus

{¶ 41} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, a relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122; *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). In order to prevail in a mandamus action seeking to vacate a factual determination of the commission in granting or denying a VSSR award, the relator must demonstrate that the commission's decision was an abuse of discretion. *State ex rel. Armstrong Steel Erectors, Inc. v. Indus. Comm.*, 144 Ohio St.3d 243, 2015-Ohio-4525, ¶ 13. Where the commission's factual determination is supported by some evidence, it has not abused its discretion and this court must uphold the decision. *State ex rel. Seibert v. Richard Cyr, Inc.*, 157 Ohio St.3d 266, 2019-Ohio-3341, ¶ 44, citing *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373, 376 (1996).

**B. Violations of Specific Safety Requirements**

{¶ 42} The Ohio Constitution provides the commission with authority to determine VSSR claims, providing in pertinent part:

> For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * * Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employ[e]es, enacted by the General Assembly or in the form of an order adopted by such board, and its decision shall be final.

Ohio Constitution, Article II, Section 35. R.C. Chapter 4121 "reflects this constitutional provision of authority and addresses VSSR violations." *Zarbana Industries v. Hayes*, 10th Dist. No. 18AP-104, 2018-Ohio-4965, ¶ 17. R.C. 4121.47(A) provides that "[n]o employer shall violate a specific safety rule adopted by the administrator of workers' compensation pursuant to [R.C. 4121.13] or an act of the general assembly to protect the lives, health, and safety of employees pursuant to [Ohio Constitution, Article II, Section 35]." A specific safety requirement is one that is (1) enacted either by the General Assembly or through an order of the Industrial Commission; (2) is specific, not general; and (3) is made for the protection of the lives, health, or safety of employees. *State ex rel. Cotterman v. St. Mary's Foundry*, 46 Ohio St.3d 42, 44 (1989), citing *State ex rel. Trydle, v. Indus. Comm.*, 32 Ohio St.2d 257 (1972), paragraph one of the syllabus.

{¶ 43} "A 'specific requirement' is more than a general course of conduct or general duty or obligation flowing from the employer-employee relationship; rather, it 'embraces such lawful, specific and definite requirements or standards of conduct * * * [that] are of a character plainly to apprise an employer of his legal obligation toward his employees.' " *State ex rel. Precision Steel Servs. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 17, quoting *Trydle* at paragraph one of the syllabus. Specific safety requirements "must 'forewarn the employer and establish a standard which [the employer] may follow.' " *State ex rel. G & S Metal Prods. v. Moore*, 79 Ohio St.3d 471, 476 (1997), quoting *State ex rel. Howard Eng. & Mfg. Co. v. Indus. Comm.*, 148 Ohio St. 165 (1947), paragraph one of

the syllabus. "[S]pecific safety requirements are ' "intended to protect employees against their own negligence and folly as well as to provide them a safe place to work." ' " *State ex rel. Byington Builders, Ltd. v. Indus. Comm. of Ohio*, 156 Ohio St.3d 35, 2018-Ohio-5086, ¶ 40, quoting *Cotterman* at 47, quoting *State ex rel. U.S. Steel Corp. v. Cook*, 10 Ohio App.3d 183, 186 (10th Dist.1983). Thus, a "VSSR award is intended to penalize employers for failing to comply with [specific safety requirements], and only those acts within the employer's control should serve as the basis for establishing a VSSR." *State ex rel. Ohio Paperboard v. Indus. Comm. of Ohio*, 152 Ohio St.3d 155, 2017-Ohio-9233, ¶ 20.

{¶ 44} "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits. It is not covered by an employer's workers' compensation premium." *State ex rel. Precision Steel Servs. v. Indus. Comm. of Ohio*, 145 Ohio St.3d 76, 2015-Ohio-4798, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 77 Ohio St.3d 271, 272 (1997). In order to prove a VSSR claim, a claimant must establish that (1) an applicable and specific safety requirement was in effect at the time the injury occurred, (2) the employer failed to comply with the requirement, and (3) the failure to comply was the proximate cause of the injury in question. *State ex rel. Scott v. Indus. Comm. of Ohio*, 136 Ohio St.3d 92, 2013-Ohio-2445, ¶ 11.

{¶ 45} "Because a VSSR award is a penalty, a specific safety requirement must be strictly construed and all reasonable doubts concerning the interpretation must be resolved in favor of the employer." *State ex rel. 31, Inc. v. Indus. Comm.*, 152 Ohio St.3d 350, 2017-Ohio-9112, ¶ 21, citing *State ex rel. Burton v. Indus. Comm.*, 46 Ohio St.3d 170, 172 (1989). *See State ex rel. Richmond v. Indus. Comm.*, 139 Ohio St.3d 157, 2014-Ohio-1604, ¶ 17 (stating that "[t]he interpretation of [specific safety requirements] rests with the commission"). However, "the strict-construction rule does not apply in resolving factual disputes," and such rule "permits neither the commission nor a reviewing court to construe the *evidence* of a VSSR strictly in the employer's favor." (Emphasis sic.) *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 98 Ohio St.3d 134, 2002-Ohio-7089, ¶ 70.

{¶ 46} Ohio Adm.Code Chapter 4123:1-5 sets forth specific safety requirements relating to workshop and factory safety. *See* Ohio Adm.Code 4123:1-5-01(A). At the time of

the injury in question,[1] Ohio Adm.Code 4123:1-5-05, which covered auxiliary equipment, provided as follows:

> (C) Power-driven conveyors - chain, bucket, belt, hook and screw.
>
> * * *
>
> (3) Safe means of passage. Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided.

Ohio Adm.Code 4123:1-5-05. Ohio Adm.Code 4123:1-5-02, which covered guarding floor and wall openings and holes, provided as follows:

> (A) Scope. This rule cove[r]s the guarding of floor and wall openings and holes. It shall not apply to industrial grating holes nor to the working face of floor openings which are occupied by elevators, dumbwaiters, conveyors, machinery, piping or containers; the loading and unloading areas of automotive truck and railroad docks, or platforms, scaffolds, pits and trenches which are occupied for the purpose of providing access to a product, facility or process equipment while being worked upon.
>
> * * *
>
> (D) Elevated platforms, runways and walkways. This rule does not apply to scaffolding.
>
> (1) Guarding.
>
> (a) Elevated platforms, runways and walkways four feet or more above floor or ground level shall be guarded with standard railings and toeboards. All elevated runways, platforms and walkways, regardless of height, located over or adjacent to water, machinery, open vats, open soaking pits or open tanks shall be provided with standard railing and toeboards.
>
> (b) When the requirement prescribed above would result in an impairment of the work being performed, alternative protection may be provided for employees. Such alternative protection shall provide safety equivalent to or greater than that required in paragraph (D)(1)(a) of this rule.

---

[1] Following the incident in question in this matter, Ohio Adm.Code 4123:1-5-05 was amended effective June 30, 2023. Because a claimant must prove that "an applicable and specific safety requirement exists, which was *in effect at the time of the injury*," the former versions of the administrative code in place at the time of the incident on November 28, 2017 apply in this matter. (Emphasis added.) *State ex rel. DeMarco v. Indus. Comm.*, 10th Dist. No. 19AP-227, 2021-Ohio-1937, ¶ 6. Thus, all references in this matter to Ohio Administrative Code provisions relating to the alleged violation of the specific safety requirement are to the versions of the code in effect at the time of the injury.

* * *

> (F) Stairway railings, guards and treads. (1) Standard stair railings and standard handrails.
>
> Every flight of stairs having four or more risers shall be equipped with standard stair railings or standard handrails as specified in the following, the width of the stair to be measured clear of all obstructions except handrails.

Ohio Adm.Code 4123:1-5-02.[2] Additionally, Ohio Adm.Code 4123:1-5-02(E) provided construction requirements for standard guard railings:

> Standard guard railings, intermediate rail and toeboards. A standard guard railing shall be constructed as a substantial barrier, securely fastened in place, and free from protruding objects, such as nails, screws and bolts, to protect openings or prevent accidental contact with some object, which barrier shall consist of a top rail not less than forty-two inches above the working level, and unless the space between the top rail and the working level is covered with substantial material, an intermediate rail.

Ohio Adm.Code 4123:1-5-02(E).

{¶ 47} Ohio Adm.Code 4123:1-5-01(B) contains definitions applicable to the specific safety requirements in subsequent sections. The term "platform" is defined as "a working space for employees elevated above the surrounding floor or ground." Ohio Adm.Code 4123:1-5-01(B)(96).[3] "Fixed ladder" is defined as "a ladder permanently attached to a structure, building, or equipment." Ohio Adm.Code 4123:1-5-01(B)(80)(c). Ohio Adm.Code 4123:1-5-02(H)(2)(a) provides that "[f]our or more risers between landings shall be considered a flight of stairs." The term "toeboard" is defined as "a vertical barrier erected along exposed edges of a floor opening, platform, runway, ramp, or scaffold to prevent falls of material." Ohio Adm.Code 4123:1-5-01(B)(139). The term "guard" is defined as "the covering, fencing, railing, or enclosure which shields an object from accidental contact." Ohio Adm.Code 4123:1-5-01(B)(69). The term "railing" is defined as "a vertical barrier erected above exposed edges of a floor opening, wall opening, ramp, platform, or runway to prevent falls of employees." Ohio Adm.Code 4123:1-5-01(B)(106). "Standard guard

---

[2] Ohio Adm.Code 4123:1-5-02 was amended twice following the injury in question effective February 1, 2022 and June 30, 2023.

[3] Ohio Adm.Code 4123:1-5-01 was amended twice following the injury in question effective February 1, 2022 and June 30, 2023. Those amendments did not alter the definitions applicable in this matter.

railing" is defined as "a substantial barrier, constructed in accordance with paragraph (E) of rule 4123:1-5-02 of the Administrative Code." Ohio Adm.Code 4123:1-5-01(B)(131).[4]

## C. Analysis

{¶ 48} The SHO found Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3).[5] Whirlpool raises several arguments in support of its assertion that the SHO's order granting Rice's VSSR application was an abuse of discretion.

*1. Whether It Was an Abuse of Discretion to Disregard Barcum's Report*

{¶ 49} Whirlpool first argues that it was arbitrary and capricious for the SHO to reject Barcum's report in its entirety. In his report, Barcum cited to provisions of the Ohio Administrative Code that Rice alleged had been violated. Barcum stated "[t]he applicability of each of these codes is addressed independently." (Stip. at 200.) Barcum proceeded to explicitly provide opinions on whether the specific safety requirements in the code had been met. For example, Barcum stated that "[i]t is my opinion that, based on the definitions provided above, that the conveyor crossover where Mr. Rice's injury occurred meets the requirements of OAC 4123: 1-5-05(C)(3) in that it provided effective alternative protection." (Stip. at 202.) The SHO rejected Barcum's report based on finding that the report provided a legal analysis of Ohio Administrative Code sections, applied the code sections to the facts of Rice's VSSR application, and provided a legal opinion from a nonlawyer.

{¶ 50} The Supreme Court of Ohio has recognized that "from its inception, one of the objectives of the workers' compensation system was to provide a remedy to injured workers without requiring them to hire an attorney or file a lawsuit." *Dayton Supply & Tool Co. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, ¶ 11. From this principle, the court has found that "lay representation has been an integral part of the workers' compensation system from the beginning." *Id.* The commission has adopted Resolution R18-1-05 providing standards of conduct for nonlawyers before the commission

---

[4] "Top rail" is defined as "the top lateral member of a standard guard railing." Ohio Adm.Code 4123:1-5-01(B)(131)(a). "Intermediate rail" is defined as "the lateral member or members of a standard guard railing, installed at intervals of no more than twenty-one inches." Ohio Adm.Code 4123:1-5-01(B)(131)(b).

[5] It is undisputed that the alleged violations of Ohio Adm.Code 4123:1-5-02(F)(1) and Ohio Adm.Code 4123:1-5-19(C)(2)(b) are not at issue in the present matter because Rice dismissed those alleged violations at the June 22, 2021 hearing. (Stip. at 210.)

and BWC.[6] Resolution R18-1-05 does not permit laypersons to perform the following functions before the commission or BWC:

> 1. Examine or cross-examine the claimant or any witness, directly or indirectly;
>
> 2. Cite, file or interpret statutory or administrative provisions, administrative rulings or case law;
>
> 3. Make and give legal interpretations with respect to testimony, affidavits, medical evidence in the form of reports or testimony, or file any brief, memorandum, reconsideration or other pleading beyond the forms actually provided by the Commission or the [BWC];
>
> 4. Comment upon or give opinions with respect to the evidence, credibility of witnesses, the nature and weight of the evidence, or the legal significance of the contents of the claims file;
>
> 5. Provide legal advice to injured workers and employers;
>
> 6. Give or render legal opinions, or cite case law or statutes to injured workers and employers before, at or after the time when claims are initially certified or denied certification as valid claims by the employer upon the presentation of claim applications by employees;
>
> 7. Provide stand-alone representation at hearing by charging a fee specifically associated with such hearing representation without providing other services.

Resolution R18-1-05.[7] The Supreme Court of Ohio has held that "nonlawyers who act in a representative capacity before the [commission and BWC] do not engage in the unauthorized practice of law as long as their conduct conforms to the standards" provided in the commission's resolution governing nonlawyer conduct. *Ohio State Bar Assn. v. Chiofalo*, 112 Ohio St.3d 113, 2006-Ohio-6512, ¶ 8.

{¶ 51} Under R.C. 4123.10, the commission is granted "broad authority" in carrying out its investigative duties. *State ex rel. Gen. Elec. Co. v. Indus. Comm.*, 10th Dist. No. 06AP-648, 2007-Ohio-3293, ¶ 23. The statute provides as follows:

> The industrial commission shall not be bound by the usual common law or statutory rules of evidence or by any technical

---

[6] Commission Resolution R18-1-05 is available on the commission's website. *See* Industrial Commission Resolution R18-1-05, Standards of Conduct, https://www.ic.ohio.gov/about-ic/policies/resolutions-pdfs/r18-1-05.pdf (accessed March 22, 2024).

[7] Standards for the conduct of nonattorneys before the commission were previously provided in Resolution R04-1-01. *See Dayton Supply & Tool Co. v. Montgomery Cty. Bd. of Revision*, 111 Ohio St.3d 367, 2006-Ohio-5852, ¶ 11-12.

> or formal rules of procedure, other than as provided in sections 4123.01 to 4123.94, inclusive, of the Revised Code, but may make an investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of such sections.

R.C. 4123.10.

{¶ 52} Whirlpool argues that rejecting Barcum's report is inconsistent with caselaw requiring that a specific safety requirement must be strictly construed and all reasonable doubts concerning the interpretation must be resolved in favor of the employer. In support of this argument, Whirlpool points to several cases including *Burton*, *Richmond*, and *State ex rel. Watson v. Indus. Comm. of Ohio*, 29 Ohio App.3d 354 (10th Dist.1986). Whirlpool's argument is without merit.

{¶ 53} It is well-established that when interpreting a specific safety requirement, such requirement must be strictly construed and all reasonable doubts concerning its interpretation construed in favor of the employer. *Richmond*, 2014-Ohio-1604, at ¶ 17; *Burton*, 46 Ohio St.3d at 172. However, the rule of strict construction does not require the commission to accept a nonlawyer's legal opinions. Consistent with the commission's resolution governing nonlawyer conduct before the commission, it was within the SHO's discretion to review Barcum's report and find that it improperly offered legal opinions. *See generally State ex rel. George v. Indus. Comm.*, 130 Ohio St.3d 405, 2011-Ohio-6036, ¶ 11, citing *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987) . Nothing in the cases cited by Whirlpool requires the commission to accept the opinions of a nonlawyer in interpreting the specific safety requirements in the Ohio Administrative Code. Additionally, outside of his report, Barcum was permitted to provide some testimony at the VSSR hearing before the SHO. Thus, Whirlpool has not demonstrated the SHO committed an abuse of discretion by rejecting Barcum's report.

*2. Whether It Was an Abuse of Discretion to Find Whirlpool Violated Ohio Adm.Code 4123:1-5-05(C)(3)*

{¶ 54} Whirlpool raises several arguments in support of its assertion that it was an abuse of discretion to find Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3). For ease of discussion, these arguments are considered out of order.

*a. Whether Rice was Required to Cross the Conveyor at the Location Where He Was Injured*

{¶ 55} First, Whirlpool contends Rice was not required to cross the conveyor where the accident occurred. Rice testified that it was part of his responsibilities as an employee in the maintenance department to determine the cause of broken equipment and to repair it. Rice was informed that several conveyor production lines were not operational and proceeded to troubleshoot the source of the problem as part of his assigned responsibilities. In the course of this troubleshooting process, Rice crossed the conveyor at issue. Zalewski agreed that the conveyor crossing at which Rice was injured was used "when maintenance needed to get back there to fix something with the conveyor system." (Stip. at 273-74.) Zalewski further agreed that in such instance, "a maintenance employee *would have to cross over that location.*" (Emphasis added.) (*Id.*) The SHO found that Rice "was crossing the conveyor belt in order to look for the cause for the stoppage of the main conveyor lines." (Stip. at 305.)

{¶ 56} The commission is "exclusively responsible for assessing the weight and credibility of evidence." *George,* 2011-Ohio-6036, at ¶ 11, citing *Burley,* 31 Ohio St.3d at 18. Here, there exists some evidence in the record to support finding that Rice was required to cross the conveyor at the location in question in order to perform his assigned and required duties. Therefore, the SHO did not commit an abuse of discretion with regard to this finding.

*b. Whether the Commission's Interpretation and Application of Ohio Adm.Code 4123:1-5-05(C)(3) Provided Sufficient Specificity Necessary to Plainly Apprise Whirlpool of its Obligations*

{¶ 57} In its third argument, Whirlpool asserts the commission's interpretation and application of Ohio Adm.Code 4123:1-5-05(C)(3) was an abuse of discretion because it renders Ohio Adm.Code 4123:1-5-05(C)(3) without the degree of specificity necessary to plainly apprise Whirlpool of its obligations. Among the multiple arguments Whirlpool raises in support of this assertion, Whirlpool argues that "importantly, assuming the top step is a platform, it is not the platform contemplated by Ohio Adm.Code 4123:1-5-05(C)(3)" because "it does not cross the conveyor." (Whirlpool's Brief at 32.) Relatedly, in its fourth argument, Whirlpool asserts that even assuming Ohio Adm.Code 4123:1-5-05(C)(3) applies, compliance with the rule is impossible because compliance would preclude work performed on the conveyor. The SHO found that the two top steps or

platforms adjacent to either side of the conveyor were encompassed by Ohio Adm.Code 4123:1-5-05(C)(3). Because these platforms were not equipped with standard guard railing, the SHO found that Whirlpool violated the rule. In its brief, the commission states that "[i]t is only common sense to understand the purpose and need for handrails" as required by Ohio Adm.Code 4123:1-5-05(C)(3) because "[t]here is obvious danger to anyone required to cross over the conveyor not only because of the moving parts and pieces, but also because it is elevated above the ground." (Commission's Brief at 17.) The commission argues "common sense should prevail" in determining whether an employer violated the specific safety requirement at issue. (Commission's Brief at 16.) While the principle of this statement is sound, neither common sense nor the plain text of the rule at issue supports the commission's interpretation.

*i. The Plain Text of the Rule Controls*

{¶ 58} It is well-established that a court will "defer to the commission's *reasonable* interpretation of its own rules." (Emphasis sic.) *31, Inc.*, 2017-Ohio-9112, at ¶ 19. However, a court "will not defer when the commission's interpretation implicitly adds language to the text of the rule." *State ex rel. Lamp v. J.A. Croson Co.*, 75 Ohio St.3d 77, 79-80 (1996). Additionally, where the application of the commission's interpretation of its rules to a unique factual situation "gives rise to a patently illogical result, common sense should prevail." *Byington Builders, Ltd.*, 2018-Ohio-5086, at ¶ 27, quoting *State ex rel. Harris v. Indus. Comm.*, 12 Ohio St.3d 152, 153 (1984). *See also Precision Steel Servs.*, 2015-Ohio-4798, ¶ 21.

{¶ 59} " 'The [commission's] rules for specific safety requirements have the effect of legislative enactments' and therefore are 'subject to the ordinary rules of statutory construction.' "*State ex rel. Parks v. Indus. Comm. of Ohio*, 85 Ohio St.3d 22, 25 (1999), quoting *State ex rel. Miller Plumbing Co. v. Indus. Comm.*, 149 Ohio St. 493, 496-97 (1948). As with analysis of any statute, analysis of the administrative rule in question begins with the text. *See State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, ¶ 38, quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (stating that " 'our inquiry begins with the statutory text, and ends there as well if the text is unambiguous' "). To reiterate, Ohio Adm.Code 4123:1-5-05(C)(3) provides as follows: "Safe means of passage. Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided."

{¶ 60} The first sentence of the rule declares the rule's purpose—to provide a safe means of passage. For the location at which this safe means of passage must be provided, one must look to the second sentence, which includes the phrase, "Where employees are required to cross conveyors." Ohio Adm.Code 4123:1-5-05(C)(3). The meaning of "cross" in this phrase is key to understanding the location encompassed by the rule. As this term is not defined, it is appropriate to consider its common meaning. *See* R.C. 1.42 ("[w]ords and phrases shall be * * * construed according to * * * common usage"); *Byington Builders, Ltd.*, at ¶ 23. "Cross" has been defined as "to go from one side of to the other." *Merriam-Webster's Collegiate Dictionary* 298 (11th Ed.2014).[8] Thus, Ohio Adm.Code 4123:1-5-05(C)(3) has the express purpose of requiring employers to provide a safe means of passage where employees are required to go from one side to the other of a power-driven conveyor.

{¶ 61} The text of the rule is also clear regarding what must be provided in order to accomplish this purpose. As stated in the second sentence of the rule, an employer must provide a fixed platform equipped with standard guard railing and toeboards. Again, the location where an employer must provide this platform is answered by the phrase: "Where employees are required to cross conveyors." Ohio Adm.Code 4123:1-5-05(C)(3). Thus, reading the plain text of the rule, Ohio Adm.Code 4123:1-5-05(C)(3) requires that in order to create a safe means of passage, the employer must provide a fixed platform equipped with standard guard railing and toeboards where employees are required to go from one side to the other of a power-driven conveyor. The magistrate finds this rule to be unambiguous.

*ii. The Commission's Interpretation is Patently Illogical and Inconsistent with the Plain Meaning of the Rule*

{¶ 62} The commission's interpretation of Ohio Adm.Code 4123:1-5-05(C)(3) differs from the more limited purpose and requirements expressed through the plain text of the rule. The SHO found that Whirlpool failed to comply with Ohio Adm.Code 4123:1-5-05(C)(3) and that Rice's injury was proximately caused by the failure to attach standard guard railing to the platform that was adjacent to the conveyor and affixed to it. The commission argues that the purpose of the rule is "to provide a 'safe means of passage,' which means it is the entire process of passage, not just on/over the conveyor itself."

---

[8] Additionally, "cross" is defined as "go or extend across or to the other side of (a path, road, stretch of water, or area)" or "go across or climb over (an obstacle or boundary)." *New Oxford American Dictionary* 412 (3d Ed.2010).

(Commission's Brief at 18.) The commission acknowledges the "dangers of a person having to cross over" a conveyor, stating that "[i]t is now not just a matter of Rice being able to safely step, walk, leap, or otherwise navigate his way across the moving conveyor line," but also having to "climb up and down the three-step riser or step-ladders that are attached to either side of the conveyor." (Commission's Brief at 17.)

{¶ 63} First, although the commission acknowledges in this mandamus action the dangers inherent in a person crossing over a power-driven conveyor, the SHO's interpretation only addresses the top step or platform adjacent to, but not crossing the conveyor. The SHO did not make any findings regarding the lack of a platform equipped with standard guard railing and toeboards in the area crossing over the conveyor, i.e., where Rice was required to go from one side to the other of the conveyor itself. The purpose of the platform required by Ohio Adm.Code 4123:1-5-05(C)(3) is to provide employees a safe means of passage where they are required to go from one side to the other of a power-driven conveyor. It is common sense that merely guarding the areas adjacent to the point at which an employee begins to cross a conveyor, but not those areas actually crossing the conveyor does not provide a safe means of passage across a power-driven conveyor. Regardless of the dangers that may exist for standing adjacent to a power-driven conveyor or climbing steps up to or down from one, the platform cited by the SHO in finding Whirlpool violated Ohio Adm.Code 4123:1-5-05(C)(3) does not accomplish the primary and only stated purpose of Ohio Adm.Code 4123:1-5-05(C)(3) because it does not cross the conveyor. The SHO's interpretation, which elides any mention of a platform over the conveyor itself, is incongruent with the rule's purpose and gives rise to a plainly illogical result.

{¶ 64} Next, and more importantly, the commission's interpretation differs from the requirements in the plain text of the rule. The commission argues that Ohio Adm.Code 4123:1-5-05(C)(3) encompasses "the three-step riser or step-ladders that are attached to either side of the conveyor." (Commission's Brief at 17.) To the contrary, the rule does not require guarding of steps or step-ladders that are attached to either side of the conveyor. Rather, the rule requires the employer to provide a platform with the specified guarding where employees are required to go from one side to the other of a power-driven conveyor.

{¶ 65} Additionally, the SHO found the top step to be a platform encompassed by Ohio Adm.Code 4123:1-5-05(C)(3).[9] Even if one considered the top step to be a platform, the rule does not require guarding of platforms adjacent to either side of the conveyor. Again, the rule requires the employer to provide a platform with the specified guarding where employees are required to cross the conveyor. The top step or platform referred to by the SHO does not cross the conveyor. It is instead merely adjacent to the place of crossing. To illustrate this point, one cannot be considered crossing the street while still resting entirely on the sidewalk.

{¶ 66} Of course, the text of Ohio Adm.Code 4123:1-5-05(C)(3) could be amended to require guarding of steps, ladders, or platforms adjacent to but not crossing conveyors. However, as discussed in the SHO's order, guarding of steps and platforms are actually encompassed elsewhere in the workshop and factory safety rules.[10] With regard to platforms adjacent to the conveyor, the SHO found:

> The Employer alleged at hearing that standard guard railing was not necessary since the elevated platform was only 28 inches off the ground and not four feet or more off the ground. The Employer also asserted that standard guard railing over the conveyor would have impaired the work being performed per Ohio Adm.Code 4123-1-5-02(D). The [SHO] rejects this argument since Ohio Adm.Code 4123-1-5-02(D) also states that elevated platforms regardless of height located adjacent to machinery shall be provided with standard guard railing and toeboards.
>
> The [SHO] finds that standard guard railing of the platform (which the Injured Worker fell from) would not impede the work being performed. Furthermore, the standard guard railing compatible with Ohio Adm.Code 4123:1-5-01(B)(131) were installed after this industrial injury by the Employer.

[9] Whirlpool argues that the SHO "erroneously found the top step of the access ladder was a platform" because the space in question was not a "working space" under the definition of a "platform" in Ohio Adm.Code 4123:1-5-01(B)(96). (Whirlpool's Brief at 30.) Citing a dictionary definition because the term "working" is not defined under the applicable code provisions, Whirlpool argues that " '[w]orking' means to be engaged in work." (Whirlpool's Brief at 30.) In light of the resolution of Whirlpool's other arguments regarding the interpretation of Ohio Adm.Code 4123:1-5-05(C)(3), it is not necessary to decide whether the SHO correctly found the top step to be a platform.

[10] Ohio Adm.Code 4123:1-5-02(H)(2)(a) provides that "[f]our or more risers between landings shall be considered a flight of stairs." Notably, Ohio Adm.Code 4123:1-5-02(H)(2)(b) excludes from the definition of a "flight of stairs" those "steps over a conveyor or to a working platform in connection with production lines or process units where access is for the performance of work, and the steps are not considered a passageway for general travel." Ohio Adm.Code 4123:1-5-02(H)(2)(b). Guarding for the steps below the top step or platform that forms the basis of the SHO's order is not at issue in this matter and, therefore, will not be further considered.

(Stip. at 307.) Ohio Adm.Code 4123:1-5-02(D) states that "[e]levated platforms * * * four feet or more above floor or ground level shall be guarded with standard railings and toeboards" and further requires that "[a]ll elevated * * * platforms * * *, regardless of height, located over or adjacent to * * * machinery, * * * shall be provided with standard railing and toeboards." Thus, Ohio Adm.Code 4123:1-5-02(D), which contains a provision applying to all elevated platforms regardless of height that are located over or adjacent to machinery, is more general in its application than Ohio Adm.Code 4123:1-5-05(C)(3), which only applies where employees are required to cross conveyors.

{¶ 67} Through reference to Ohio Adm.Code 4123:1-5-02(D), the SHO appeared to acknowledge that the platforms adjacent to the conveyor were subject to a requirement mandating employers to provide standard railing and toeboards regardless of the platform's height, in addition to finding Ohio Adm.Code 4123:1-5-05(C)(3) applied to these same platforms. However, the SHO's interpretation of Ohio Adm.Code 4123:1-5-02(D) in conjunction with Ohio Adm.Code 4123:1-5-05(C)(3) ignores the requirement in Ohio Adm.Code 4123:1-5-05(C)(3) that the platform must provide safe passage in the area where employees *cross* from one side of the conveyor to the other, not merely in the area *adjacent* to the machinery of the conveyor.

{¶ 68} As with a court interpreting a statute, the commission may not rewrite the text of a specific safety requirement in order to fit its preferred interpretation. *31, Inc.,* 2017-Ohio-9112, at ¶ 21. *See State ex rel. CNN, Inc. v. Bellbrook-Sugarcreek Local Schools*, 163 Ohio St.3d 314, 2020-Ohio-5149, ¶ 33 (stating that principles of statutory construction "do not authorize a court to rewrite statutory language"). In interpreting a specific safety requirement, the commission may not add or delete words from the plain text of the requirement. *See State v. Hughes*, 86 Ohio St.3d 424, 427 (1999) ("In construing a statute, we may not add or delete words."); *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004), quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926) (rejecting a party's argument that "would result 'not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope' " (Brackets sic.)); *State ex rel. LetOhioVote.org v. Brunner*, 123 Ohio St.3d 322, 2009-Ohio-4900, ¶ 49. By interpreting Ohio Adm.Code 4123:1-5-05(C)(3) to include a platform that does not cross the conveyor, the SHO ignored or effectively removed words from the plain text of the rule. *See 31, Inc.* at ¶ 19. *See also Wilson*

*v. Kasich*, 134 Ohio St.3d 221, 2012-Ohio-5367, ¶ 40. Thus, the SHO's interpretation of the specific safety requirement was an abuse of discretion because it does not accurately reflect the text or clear purpose of the applicable rule.

{¶ 69} Next, Whirlpool's impossibility defense also demonstrates the logical flaws in the SHO's interpretation of Ohio Adm.Code 4123:1-5-05(C)(3). Whirlpool argues in its brief that "[i]f Whirlpool installed a standard guard rail, as contemplated by Ohio Adm.Code 4123:1-5-05(C)(3), across the surface of the conveyor system at the point where [Rice] crossed, it would prohibit any of the product from moving along the conveyor system thereby preventing the functionality of the conveyor system itself." (Emphasis omitted.) (Whirlpool's Brief at 36.) In order to "establish impossibility as an affirmative defense to an application for an additional award for a violation of a specific safety requirement, an employer must show (1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available." *State ex rel. Jackson Tube Serv. v. Indus. Comm. of Ohio*, 154 Ohio St.3d 180, 2018-Ohio-3892, ¶ 20. Where some evidence indicates that it was not impossible for the employer to comply with the regulation at issue, it does not constitute an abuse of discretion for the commission to reject the employer's impossibility defense. *See State ex rel. Mosser Constr., Inc. v. Indus. Comm.*, 61 Ohio St.3d 445 (1991) (finding the commission did not abuse its discretion in granting a VSSR award and finding that while it would have been difficult to follow the guarding requirement, it was not impossible).

{¶ 70} The SHO noted Whirlpool's impossibility defense, stating: "The Employer also asserted that standard guard railing over the conveyor would have impaired the work being performed." (Stip. at 307.) Despite discussion of the impossibility of guarding the area over the conveyor, the SHO rejected Whirlpool's impossibility defense by finding that "standard guard railing of the platform (which the Injured Worker fell from) would not impede the work being performed." (*Id.*) The SHO also pointed to the guard railing installed by Whirlpool on the top steps or platforms adjacent to the conveyor after Rice's injury to find that standard guard railing of those platforms would not have impeded the work being performed.

{¶ 71} The commission argues that "Whirlpool cannot in good conscience argue that guardrails were impractical, inappropriate, or impossible to construct here as it clearly

installed them after Rice's injuries." (Commission's Brief at 20.) This argument lays bare the logical fallacy of the commission's position. According to the commission, it is not necessary to consider Whirlpool's defense that it is impossible to provide a platform for employees to safely cross the conveyor because Whirlpool provided guardrails on an adjacent platform that does not cross the conveyor. Under the commission's argument, providing guardrails on this adjacent platform demonstrates it is *not impossible* to comply with Ohio Adm.Code 4123:1-5-05(C)(3). Therefore, according to the commission, it is *possible* to comply with Ohio Adm.Code 4123:1-5-05(C)(3), by providing guardrails on the adjacent platform even though there exists no platform crossing the conveyor. Considering the purpose of Ohio Adm.Code 4123:1-5-05(C)(3) is to provide safe passage for employees *crossing* the conveyor, the commission's argument is illogical, not in accordance with the plain text of the rule, and in defiance of common sense.

{¶ 72} The SHO did not address Whirlpool's argument that compliance with Ohio Adm.Code 4123:1-5-05(C)(3) in the area crossing the conveyor—the area subject to the specific safety requirement alleged to have been violated—was impossible. To answer this question, the SHO would have had to analyze whether it was impossible to provide a platform equipped with standard guard railing and toeboards where employees cross from one side of the conveyor to the other. Rejecting Whirlpool's impossibility argument based on an incorrect interpretation of the specific safety requirement was an abuse of discretion.

{¶ 73} Whirlpool's impossibility defense also explains the necessity of returning the matter to the commission. After all, it is beyond doubt that Whirlpool did not provide a platform with the required guarding at the conveyor crossing at issue. Whirlpool does not argue otherwise. Indeed, Whirlpool admits that it provides a guarded platform at conveyor crossings in other areas: "In most areas, Whirlpool utilizes a raised platform, with standard guard rails and toeboards, which resembles a bridge." (Whirlpool's Brief at 38.) However, the SHO never considered Whirlpool's impossibility defense under a proper interpretation of Ohio Adm.Code 4123:1-5-05(C)(3). Thus, the commission must resolve this question, as applicable, in the first instance.

{¶ 74} Next, the magistrate does not find the plain text of Ohio Adm.Code 4123:1-5-05(C)(3) to be without the degree of specificity necessary to plainly apprise Whirlpool of its obligations. Indeed, Whirlpool's argument reflects that it is keenly aware that the platform required by Ohio Adm.Code 4123:1-5-05(C)(3) must "cross the conveyor." (Whirlpool's

Brief at 32.) Thus, although the SHO's analysis of Ohio Adm.Code 4123:1-5-05(C)(3) was an abuse of discretion, the magistrate finds that the specific safety requirements of Ohio Adm.Code 4123:1-5-05(C)(3) plainly apprise an employer of its legal obligation to its employees. *Trydle*, 32 Ohio St.2d, paragraph one of the syllabus. Because the "mandatory specific duties" in the plain text of Ohio Adm.Code 4123:1-5-05(C)(3) are "apparent to an employer interpreting [the] provision," Whirlpool could be penalized for failing to comply with the specific safety requirement if the commission finds the elements of a VSSR claim have been established. *State ex rel. Oliver v. Southeastern Erectors, Inc.*, 76 Ohio St.3d 26, 28 (1996).

{¶ 75} In conclusion, because the SHO's interpretation of the specific safety requirement in Ohio Adm.Code 4123:1-5-05(C)(3) was an abuse of discretion, it is necessary to return this matter to the commission for it to determine whether, based on a correct interpretation of Ohio Adm.Code 4123:1-5-05(C)(3), the elements of a VSSR claim have been established. Additionally, as appropriate, the commission must address Whirlpool's impossibility defense under the correct interpretation of the rule.

*iii. Whirlpool's Other Arguments*

{¶ 76} In its second argument, Whirlpool argues it was an abuse of discretion to find a violation of Ohio Adm.Code 4123:1-5-05(C)(3) because Rice "did not sustain an injury while crossing the conveyor." (Emphasis omitted.) (Whirlpool's Brief at 27.) Whirlpool also challenges the proximate cause of Rice's injury, stating that the proximate cause was Rice's "tripping over the emergency stop cord which ran along the top step of the fixed access ladder." (Whirlpool's Brief at 28.) The SHO relied on Rice's description of the circumstances leading to the injury, finding that as Rice "was stepping forward onto the top of the metal platform," Rice became entangled in the stop cord, lost his balance, and fell. (Stip. at 305.) The SHO found that "the platform, which the Injured Worker fell from did not have standard guard railing" required by Ohio Adm.Code 4123:1-5-05(C)(3), which "would have prevented this industrial injury." (Stip. at 306.)

{¶ 77} Because the SHO's findings on this issue are inextricably intertwined with the improper analysis of Ohio Adm.Code 4123:1-5-05(C)(3), it is necessary for the commission to consider in the first instance whether Ohio Adm.Code 4123:1-5-05(C)(3) is applicable based on the location at which Rice's injury occurred. The commission must also determine, if it finds Ohio Adm.Code 4123:1-5-05(C)(3) is applicable and Whirlpool

violated such rule, whether Whirlpool's failure to comply was the proximate cause of Rice's injury.

*3. Whether It Was an Abuse of Discretion to Deny a Rehearing*

**{¶ 78}** Finally, Whirlpool argues the commission abused its discretion by refusing to grant Whirlpool's motion for rehearing. Whirlpool states that "[c]onsistent with the arguments made hereinabove, Whirlpool requested rehearing on the grounds that the evidence before the Commission did not support a finding of a violation of Ohio Adm.Code 4123:1-5-05(C)(3)." (Whirlpool's Brief at 40.) Whirlpool also states that the SHO "erroneously excluded the report of Barcum, the [SHO's] order contained clear mistakes of fact and law, and the [SHO] ultimately misapplied Ohio Adm.Code 4123:1-5-05(C)(3)." (Whirlpool's Brief at 41.) Whirlpool's arguments regarding the denial of a rehearing are resolved by the analysis of the VSSR claim. *See 31, Inc.* at ¶ 17.

**D. Conclusion**

**{¶ 79}** Based on the foregoing, Whirlpool has demonstrated a clear legal right to the requested relief and that the commission is under a clear legal duty to provide such relief. *See generally State ex rel. Cogan v. Indus. Comm.*, __ Ohio St.3d __, 2023-Ohio-3567, ¶ 22 (finding that those subject to decisions of the commission have a "clear legal right to correct application of the law"). Accordingly, it is the decision and recommendation of the magistrate that Whirlpool's request for a writ of mandamus should be granted and this matter returned to the commission for further proceedings in accordance with this decision and law.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.