[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Whirlpool Corp. v. Rice*, Slip Opinion No. 2026-Ohio-1094.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-1094

[THE STATE EX REL.] WHIRLPOOL CORPORATION, APPELLANT, *v.* RICE ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Whirlpool Corp. v. Rice*, Slip Opinion No. 2026-Ohio-1094.]

*Workers' compensation—Violation of specific safety requirements—Former Adm.Code 4123:1-5-05(C)(3)—Industrial Commission's factual findings were based on some evidence—Appellant failed to prove that former Adm.Code 4123:1-5-05(C)(3) was misinterpreted or misapplied— Compliance with specific safety requirement was not impossible—Court of appeals' judgment affirmed.*

(No. 2024-1429—Submitted May 13, 2025—Decided March 31, 2026.)

APPEAL from the Court of Appeals for Franklin County,

No. 22AP-361, 2024-Ohio-3252.

_____

The per curiam opinion below was joined by FISCHER, BRUNNER, HAWKINS, and SHANAHAN, JJ. DEWINE, J., concurred in judgment only, with an opinion joined by DETERS, J. KENNEDY, C.J., dissented, with an opinion.

**Per Curiam.**

{¶ 1} Appellee Keith Rice worked as a maintenance technician for appellant, Whirlpool Corporation. Rice tripped and fell as he was crossing a conveyor line while attempting to diagnose the cause of a conveyor-line stoppage. The crossing lacked a railing on either side of the conveyor line. Appellee the Industrial Commission of Ohio found that a standard guard railing was required and that had there been one, Rice would not have been injured. The commission concluded that Whirlpool had committed a violation of a specific safety requirement ("VSSR"). Under Ohio's workers' compensation system, an employee may be entitled to compensation in addition to workers' compensation benefits when the employee's workplace injury resulted from an employer's VSSR. *See* Ohio Const., art. II, § 35; R.C. 4121.47.

{¶ 2} Whirlpool filed for a writ of mandamus in the Tenth District Court of Appeals, asking the court to vacate for an abuse of discretion the commission's order finding a VSSR. The Tenth District denied the writ. Whirlpool now appeals and has also moved for oral argument. We deny the motion for oral argument and affirm the Tenth District's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 3} Rice worked in the maintenance department at Whirlpool. During a shift in November 2017, he was called to repair several conveyor lines that had stopped running. He walked the conveyor lines to look for the cause of the stoppage until he came to a place where he had to cross over a running conveyor belt designated for assembled dryer machines.

{¶ 4} The ceiling was low in that location, so unlike some of the other conveyor cross-overs in the factory, this point did not have a bridge or elevated platform allowing employees to walk up and over the conveyor belt to reach the other side of the line. But because maintenance employees would sometimes have to cross over the conveyor belt at that location to fix the conveyor system, Whirlpool had welded a metal step ladder to each side of the conveyor line. The top step of each ladder measured 24 inches wide by 14¼ inches long and was also welded to the side of the conveyor line and level with the conveyor belt. Whirlpool had also installed metal slats into the conveyor belt for employees to step on while walking across the line. And above the belt—almost to ceiling level—Whirlpool had installed a conduit pipe that workers could hold onto for balance as they crossed the belt. But at the time that Rice had to cross over the belt, there were no other railings for balance, and an emergency-stop cord ran across the top step of the ladder on the far side of the conveyor.

{¶ 5} Rice attempted to cross the conveyor belt to continue his assessment of the lines. According to Rice, he walked up the steps and, with his left foot on one of the metal slats, stepped over the conveyor belt with his right foot, while holding onto the conduit pipe above him. As he stepped forward, but before he was able to firmly plant his right foot on the top step of the ladder on the other side, his right foot got tangled in the emergency-stop cord and he tripped and fell forward. Rice claims that although he flailed to try to grab something to stop his fall, there were no railings to grab onto on the far side of the belt, so he tumbled to the floor, falling approximately 28 inches to the ground below and landing on his right knee.

{¶ 6} Rice's workers' compensation claim was allowed for multiple injuries to his right knee and other related conditions, and he ultimately had to have his right leg amputated just above the knee. After Rice's injury, Whirlpool moved the emergency-stop cord to below the access ladder and installed rails on both sides of the ladders.

{¶ 7} Rice applied for a VSSR award based in part on Whirlpool's failure to provide railings at the conveyor crossing in violation of Adm.Code 4123:1-5-05(C). A staff hearing officer ("SHO") with the commission found (1) that Rice was injured while crossing over a conveyor belt; (2) that Adm.Code 4123:1-5-05(C)(3) specifically required Whirlpool to provide a "fixed platform equipped with standard guard railing" at such a crossing; (3) that although the top step of each ladder constituted a "fixed platform" as defined by the administrative code, the platforms were not equipped with standard guard railings and therefore Whirlpool violated Adm.Code 4123:1-5-05(C)(3); and (4) that Whirlpool's failure to have a standard guard railing attached to the platform from which Rice fell was the proximate cause of his injury. The SHO rejected Whirlpool's contention that installing standard guard railing would have impaired the functioning of the conveyor line, citing the fact that after Rice's injury, Whirlpool had installed guard rails that were compatible with the administrative code.

{¶ 8} The SHO therefore concluded that Whirlpool had committed a VSSR and awarded Rice additional compensation in the amount of 50 percent of the maximum weekly rate. Whirlpool requested a rehearing before the commission, but that request was denied.

{¶ 9} Whirlpool then filed for a writ of mandamus in the Tenth District, asserting that the SHO's order "contain[ed] clear mistakes of fact and law" and that the SHO had abused her discretion. Whirlpool asked the Tenth District to vacate the SHO's order or, in the alternative, to require a rehearing. A magistrate recommended that the Tenth District grant the writ. 2024-Ohio-3252, ¶ 17. The court of appeals adopted the magistrate's findings of fact but disagreed with the magistrate's legal conclusions, finding that because Whirlpool had affixed platforms to the conveyor for the purpose of allowing its employees to cross the conveyor at that point, Adm.Code 4123:1-5-05(C)(3) required that it provide standard guard railing for employees to use while crossing the conveyor. *Id.* at ¶ 2,

10-11, 17. The court ultimately "den[ied] Whirlpool's request for a writ of mandamus and le[ft] intact the commission's order that found Whirlpool committed a VSSR." *Id.* at ¶ 17. Whirlpool appealed.

## II. STANDARD OF REVIEW

### A. Mandamus Standard

{¶ 10} To be entitled to a writ of mandamus, Whirlpool must show by clear and convincing evidence that it has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that Whirlpool has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. In a direct appeal of a judgment in a mandamus action that originated in the court of appeals, this court reviews the judgment as if the action had been originally filed here. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 164 (1967).

{¶ 11} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law, when the commission has misinterpreted a statute, or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. Ordinarily, "[w]here a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. Because the commission's decision whether to grant a VSSR award does not involve a claimant's right to participate or to continue to participate in the workers' compensation fund, such a decision is not appealable under R.C. 4123.512(A) and may be challenged in a mandamus action. *State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 9.

## B. VSSR Standard

{¶ 12} Article II, Section 35 of the Ohio Constitution allows for an award of additional compensation to a worker who has sustained an injury resulting from a "failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employees, enacted by the general assembly or in the form of an order adopted by [the] board."[1] *See also* R.C. 4121.47(A) (prohibiting an employer from violating a "specific safety rule adopted by the administrator of workers' compensation . . . or an act of the general assembly to protect the lives, health, and safety of employees"). "An award for a VSSR is 'a new, separate, and distinct award' over and above standard workers' compensation benefits" and "is not covered by an employer's workers' compensation premium." *State ex rel. Precision Steel Servs., Inc. v. Indus. Comm.*, 2015-Ohio-4798, ¶ 15, quoting *State ex rel. Newman v. Indus. Comm.*, 1997-Ohio-62, ¶ 7.

{¶ 13} To be entitled to a VSSR award, the claimant must establish (1) that an applicable specific safety requirement was in effect at the time of the injury, (2) that the employer violated the requirement, and (3) that the employer's violation proximately caused the injury. *Cassens* at ¶ 12. Because a VSSR award is in the nature of a penalty, it is "imperative that a safety requirement be specific enough to plainly apprise an employer of its legal obligations towards its employees." (Cleaned up.) *Id.* at ¶ 11. And "all reasonable doubts regarding the applicability of a specific safety requirement are to be strictly construed in the employer's favor." *State ex rel. Culver v. Indus. Comm.*, 2025-Ohio-1612, ¶ 33.

{¶ 14} The specific safety requirement at issue in Rice's claim related to "[p]ower-driven conveyors," and at the time of his injury, it provided: "Safe means

---

1. The "board" referred to in Article II, Section 35 is the State Liability Board of Awards, which was superseded in 1913 when the General Assembly created the Industrial Commission. *See State ex rel. Engle v. Indus. Comm.*, 142 Ohio St. 425, 429 (1944), citing Am.S.B. No. 137, 103 Ohio Laws 95.

of passage. Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided." Former Adm.Code 4123:1-5-05(C)(3), 2015-2016 Ohio Monthly Record 2-4515 (effective June 1, 2016).

{¶ 15} A "platform" was defined as a "working space for employees elevated above the surrounding floor or ground." Former Adm.Code 4123:1-5-01(B)(96), 2015-2016 Ohio Monthly Record 2-4496 (effective June 1, 2016). A "standard guard railing" was defined as "a substantial barrier, constructed in accordance with [former Adm.Code 4123:1-5-02(E)]." Former Adm.Code 4123:1-5-01(B)(131), 2015-2016 Ohio Monthly Record 2-4498 (effective June 1, 2016). Former Adm.Code 4123:1-5-02(E), in turn, required that a standard guard railing "be constructed as a substantial barrier, securely fastened in place, and free from protruding objects . . . which barrier shall consist of a top rail not less than forty-two inches above the working level, and unless the space between the top rail and the working level is covered with substantial material, an intermediate rail." Former Adm.Code 4123:1-5-02(E), 2015-2016 Ohio Monthly Record 2-4500 (effective June 1, 2016). A "toeboard" was defined as "a vertical barrier erected along exposed edges of a floor opening, platform, runway, ramp, or scaffold to prevent falls of material." Former 4123:1-5-01(B)(139), 2015-2016 Ohio Monthly Record 2-4498 (effective June 1, 2016).

{¶ 16} Accordingly, to prove that Whirlpool violated this specific safety requirement, Rice needed to show that (1) he was required to cross the conveyor at that spot, (2) the crossing lacked "a fixed platform equipped with standard guard railing and toeboards," former Adm.Code 4123:1-5-05(C)(3), 2015-2016 Ohio Monthly Record at 2-4515, and (3) this absence caused his injury.

### III. ANALYSIS

#### A. Oral argument is not necessary

{¶ 17} Whirlpool asks for oral argument. Appellees have not responded. In a direct appeal, granting a request for oral argument is subject to this court's discretion. S.Ct.Prac.R. 17.02(A). In exercising that discretion, we consider "whether the case involves (1) a matter of great public importance, (2) complex issues of law or fact, (3) a substantial constitutional issue, or (4) a conflict among courts of appeals." *State ex rel. Walters v. Indus. Comm.*, 2024-Ohio-552, ¶ 40.

{¶ 18} Whirlpool claims that this court's decisions in *TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 2022-Ohio-4677, and *In re Application of Alamo Solar I, L.L.C.*, 2023-Ohio-3778, have changed the deference given to the commission's finding of a VSSR. *See TWISM* at ¶ 29 ("Ohio's system of separation of powers precludes any sort of mandatory deference to agency interpretations"). Whirlpool asserts that this change in law justifies oral argument. But we have already reaffirmed that courts are not required to defer to an administrative agency's *legal* interpretations of regulations. *See Alamo Solar I* at ¶ 13-14. Moreover, the issue of law here is not complex, and the parties' briefs are sufficient to decide this case. We therefore deny the motion for oral argument.

#### B. The commission's factual findings were based on some evidence

{¶ 19} In its first proposition of law, Whirlpool asserts that the SHO misinterpreted Adm.Code 4123:1-5-05(C)(3), that Whirlpool did not violate the plain and unambiguous language of that administrative rule, and that the Tenth District erred by adopting the SHO's interpretation. Whirlpool's briefing, however, is not particularly clear about whether it is also challenging the SHO's factual findings and, if so, which findings lacked evidentiary support. In its opening brief, Whirlpool cites evidence in the record that it claims contradicts the SHO's findings relating to (1) whether Whirlpool required Rice to cross the conveyor belt at the

location of the injury and (2) whether he fell while crossing the conveyor belt or while descending the access ladder on the opposite side of the conveyor line. Whirlpool also states that the lack of toeboards or standard guard railing was not the proximate cause of Rice's injury. To the extent that Whirlpool challenges the SHO's factual findings on these issues, we consider them first before moving to the commission's interpretation of Adm.Code 4123:1-5-05(C)(3).

{¶ 20} As noted above, the bar for finding an error in the commission's factfinding is high. The commission's order "will not be disturbed as manifesting an abuse of discretion" if it is "adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record." *State ex rel. Levitin v. Indus. Comm.*, 2023-Ohio-3559, ¶ 15. Given this high standard, Whirlpool cannot prevail in challenging the SHO's factfinding on any of these issues.

{¶ 21} First, contrary to Whirlpool's contention, there is some evidence that Rice was required to cross the conveyor belt where he did. According to Rice's hearing testimony and his statement to the Bureau of Workers' Compensation Safety Violations Investigation Unit, as a maintenance technician, he was responsible for resolving assembly-line malfunctions. On the date of his injury, he was informed that several conveyor lines were down and was given the task of finding the source of the unexpected shutdown. He walked the conveyor lines to assess the situation. Since he had not found the source by the time he got to the conveyor belt at issue here, he crossed over that belt to continue his search.

{¶ 22} During the hearing, a Whirlpool manager acknowledged that a maintenance employee would typically cross the conveyor system at that location only when the company had issues with the conveyor system and agreed that if the maintenance employee needed to fix something with the conveyor system, the employee "would have to cross over that location." Moreover, the setup of the location indicates that Whirlpool designated it as a location for crossing. Whirlpool

had attached ladders to each side of the conveyor line and affixed the top step to the sides of the conveyor line so that they were level with the belt. Whirlpool had also installed the conduit pipe above the conveyor belt that employees could hold for stability while crossing the line and metal slats into the conveyor belt for employees to step on while walking across the conveyor line.

{¶ 23} So even if Whirlpool had not expressly commanded Rice to cross the conveyor at that exact location, there is some evidence that Rice was required to cross there to fulfill the task that Whirlpool had given him and that a crossing had been built at this location to do so. The SHO "may draw reasonable inferences and rely on his or her own common sense in evaluating the evidence." *State ex rel. Supreme Bumpers, Inc. v. Indus. Comm.*, 2002-Ohio-7089, ¶ 69.

{¶ 24} Second, there is some evidence that Rice fell while crossing the belt. The precise description of Rice's actions varies a bit throughout the record, but when questioned directly by the SHO about the sequence of events, Rice testified that he put his left foot down first on one of the metal slats and was moving his right foot toward the top step of the opposite side, but before his right foot firmly landed, it got caught in the emergency-stop cord and he fell to the ground below. Therefore, the SHO had some evidence from which to conclude that Rice sustained the injury while crossing over the conveyor belt, since he was stepping onto the top ladder step when he tripped and fell.

{¶ 25} Third, Whirlpool argues that, because Rice tripped over the cord and fell, having toeboards on the top steps of the access ladders or over the conveyor would not have prevented Rice's injuries. Whirlpool does not analyze why guard railing would not have helped, saying only that "the same logic applies to guardrails." Yet the SHO found that the injury was proximately caused by the lack of any *standard guard railing* attached to the platform from which Rice had fallen and that installation of such a railing would have prevented Rice's injuries. And there was some evidence to support this conclusion: Rice testified that when he fell

10

forward while crossing over the conveyor belt to step onto the top step of the far-side ladder, he tried—in vain—to grab something to stop his fall.

## C. Whirlpool has not established that the SHO misinterpreted or misapplied former Adm.Code 4123:1-5-05(C)(3)

{¶ 26} Whirlpool asserts that former Adm.Code 4123:1-5-05(C)(3) is unambiguous, though it disagrees with the appellees about what the regulation means. At the time that Rice was injured, the rule read: "Safe means of passage. Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided." Former Adm.Code 4123:1-5-05(C)(3), 2015-2016 Ohio Monthly Record at 2-4515. Whirlpool asserts that "required" means "commanded" or "compelled," that "where" means "'the place or point at, in, or to which,' " and that the top step of the access ladder can only be considered a "platform" if it is a space that is used for some work purpose other than crossing a conveyor belt. As a result, Whirlpool contends that (1) Rice was not "required" to cross the conveyor at the location of his injury but instead that he chose to cross there, (2) he had successfully made it to the other side of the belt before the injury happened so he was no longer in the specific location "where employees . . . cross conveyors," and (3) the top steps of the ladders could not be considered "platforms." For these reasons, Whirlpool argues, the specific safety requirement did not apply.

{¶ 27} Whirlpool is wrong and has not proved that the SHO misinterpreted or misapplied former Adm.Code 4123:1-5-05(C)(3).

### 1. Whirlpool's requirement argument contradicts the plain meaning of "required"

{¶ 28} Whirlpool suggests that an employee is not "required" to do something under former Adm.Code 4123:1-5-05(C)(3) unless the employer commands exactly that act. Here, Whirlpool contends, it merely required Rice to

identify and correct the maintenance issue with the conveyer lines—it did not compel him to cross the conveyors at the particular location of his injury.

{¶ 29} Former Adm.Code 4123:1-5-05 did not define "required." When a term in an administrative rule is undefined, "we give the term its plain and ordinary meaning." *Culver*, 2025-Ohio-1612, at ¶ 35. In its common, ordinary use, "required" has degrees of meaning. For example, if Whirlpool had given Rice the task of tightening bolts on a conveyor belt, Rice would have been required to use tools (say, a ratchet wrench). He might have had discretion to choose which tool to use, but by requiring Rice to fulfill a certain task, Whirlpool would also be commanding that Rice take certain steps to achieve that goal. Whirlpool might have been able to undermine Rice's argument that he was required to cross at that location if it had presented some other safer and viable option by which Rice could have fulfilled the same task. But as noted above, some evidence in the record shows that Rice crossed the conveyor at a location where maintenance employees crossed to fix the conveyor system.

### 2. Whirlpool's location argument fails

{¶ 30} Whirlpool asserts that the phrase "[w]here employees are required to cross conveyors" in former Adm.Code 4123:1-5-05(C)(3), 2015-2016 Ohio Monthly Record at 2-4515, limits the rule's applicability to only the vertical space directly over the conveyor belt and therefore excludes any platforms affixed to the sides of a conveyor, even if provided for the explicit purpose of crossing. As Whirlpool sees it, Rice was not crossing the conveyor as he ascended or descended the ladders attached to the conveyor line; nor was he crossing as he reached the top of the ladders. He was crossing only while directly over the belt.

{¶ 31} Former Adm.Code 4123:1-5-05 did not define what it meant for an employee to "cross" a conveyor, and therefore we give the term its plain and ordinary meaning. *See Culver* at ¶ 35. The plain meaning of the word "cross" indicates that the act of crossing this particular conveyor included climbing up and

over the belt. As an illustration, if an employee on the top step of the ladder on one side were stopped and asked, "What are you doing?" the employee would doubtlessly reply, "I am crossing the conveyor." And again, a Whirlpool manager agreed that that particular crossover was "only used when [Whirlpool had] an issue with [its] conveyor system" and that "generally a maintenance employee would have to cross over that location" to fix the conveyor system.

{¶ 32} In this case, the plain reading of the rule is that "[w]here employees . . . cross conveyors" includes the top steps of the ladders at issue here, which Whirlpool had welded to the conveyor and constructed for the purpose of allowing employees to cross the conveyor at that specific location. And as the Tenth District found, "[n]owhere does the rule limit its application to the airspace above conveyors." 2024-Ohio-3252 at ¶ 11 (10th Dist.). Therefore, Whirlpool's argument that Rice was no longer directly over the belt when he tripped and fell— and so no longer within the scope of the specific safety requirement—fails.

### 3. Whirlpool's platform argument misses the mark

{¶ 33} Whirlpool also asserts that the top steps of the access ladders on either side of the belt are not "platforms" as defined by the administrative code. Former Adm.Code 4123:1-5-01(B)(96) defined a "platform" as "a working space for employees elevated above the surrounding floor or ground." 2015-2016 Ohio Monthly Record at 2-4496. Whirlpool disputes that the top step of each ladder is a working space, arguing that there was no evidence of any employee conducting work on those steps and that it cannot conceive of what work could be done from or on that space.

{¶ 34} The evidence shows that the top step of each ladder was wider and longer than the ladder's risers, welded to the conveyor line, and level with the conveyor belt. The SHO described the top step as a metal platform affixed to the top of the fixed ladder. Rice's work at the time of the accident was checking the conveyor lines to determine the cause of a stoppage. To check the lines, he had to

cross one of the belts. His work, thus, was crossing the conveyor belt to check the lines. Each of the top ladder steps clearly serve that work purpose and therefore, in this case, constituted a "working space." As such, the SHO did not abuse her discretion in concluding that the top steps were "platforms" under Adm.Code 4123:1-5-01(B)(96).

### D. Whirlpool has shown that complying was not impossible

{¶ 35} In its second proposition of law, Whirlpool argues that the SHO and the Tenth District erred by rejecting its impossibility defense. To prove impossibility as a defense to an application for a VSSR award, the "employer must show (1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available." *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, 2018-Ohio-3892, ¶ 20-21.

{¶ 36} Whirlpool argues that if Adm.Code 4123:1-5-05(C)(3) applied here, the rule would have required it to install a platform with guard railing and toeboards *over* the conveyor. Since this conveyor belt was used to transport fully assembled dryer machines but passed through a relatively low-ceilinged area, building a single platform over the conveyor belt or placing fixed railings over the conveyor belt to assist with crossing it would be impossible. Such railings, Whirlpool insists, would stop the machines from passing down the belt.

{¶ 37} Whirlpool has trapped itself in its own narrow interpretation of the regulation. The first element of the defense is that compliance with the specific safety requirement would have been impossible or would have made the required work impossible to perform. *Jackson Tube Serv., Inc.* at ¶ 20-21. The SHO found that the top steps of each ladder were platforms for crossing the conveyor, so the newly installed guard railing above each of the platforms, compatible with Adm.Code 4123:1-5-05(C)(3) and Adm.Code 4123:1-5-01(B)(131), fulfilled

Whirlpool's obligation. Thus, Whirlpool clearly could have installed compliant railings without hindering the dryer machines' progress down the belt.

{¶ 38} Whirlpool's argument alternatively fails under the second element—that no alternative means of employee protection could have been provided. Even if the new rails did not strictly fulfill the specific safety requirement, they at least would have provided an alternative means of employee protection that could have prevented injury. Since Whirlpool has shown that installing such rails was not impossible and did not impair the work being performed, it cannot now rely on the impossibility defense.

## IV. CONCLUSION

{¶ 39} We affirm the judgment of the Tenth District Court of Appeals and deny Whirlpool's motion for oral argument.

Judgment affirmed.

_____

**DEWINE, J., joined by DETERS, J., concurring in judgment only.**

{¶ 40} I depart from the majority's conclusion that Whirlpool Corporation was able to comply with former Adm.Code 4123:1-5-05(C)(3), which requires: "Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided." 2015-2016 Ohio Monthly Record 2-4515 (effective June 1, 2016). As the dissenting opinion correctly explains, the layout of the workspace made it infeasible to install a fixed platform over the conveyor belt. *See* dissenting opinion, ¶ 47, 60. However, because Whirlpool had an "alternative means of employee protection"—namely, the handrails that it subsequently installed on the steps—it cannot avail itself of the impossibility defense. Therefore, I concur in the majority's judgment affirming the Tenth District's judgment.

### *Whirlpool Has Not Established an Impossibility Defense*

{¶ 41} The majority missteps in finding that the top step of the ladders adjacent to the conveyor line are platforms under former Adm.Code 4123:1-5-05(C)(3). *See* majority opinion, ¶ 34. As the dissent explains, the regulation required "an elevated platform *over* the conveyor, and the platform must have guardrails." (Emphasis added.) Dissenting opinion at ¶ 57. Because these steps are not platforms, adding guardrails to the steps would not have brought Whirlpool into compliance with former Adm.Code 4123:1-5-05(C)(3). *Id.*

{¶ 42} This also explains why Whirlpool has established the first prong of an impossibility defense to the violation of a specific safety requirement ("VSSR"). As the dissent notes, because the required platform must *cross* the conveyor belt, it would be impossible to build one that would not obstruct the conveyor line because of the low ceiling height. *See id.* at ¶ 60.

{¶ 43} However, an impossibility defense has two prongs. The employer must show "(1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available." *State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, 2018-Ohio-3892, syllabus. While Whirlpool has established the first prong, it has not established the second.

{¶ 44} Look at the picture in the dissenting opinion that depicts the handrails Whirlpool added after the accident. *See* dissenting opinion at ¶ 60. Given the narrowness of the conveyor crossing, it is evident that the handrails could be held while crossing, or, in the event of a slip, easily grasped. As Whirlpool explains in its merit brief, this "conduit hand hold" was installed "for employees to grasp while traversing the conveyor. The conduit hand hold was at sufficient height to allow the assembled boxed dryers to pass underneath and was securely anchored to the floor on either side of the conveyor next to the steps." Handrails plainly would

help protect an employee crossing the conveyor and significantly reduce the risk of falling or injury.

{¶ 45} The dissent suggests otherwise, opining, "[T]he newly installed railings may make the ladders to the conveyor safer, but they do not remedy the hazard of crossing over a moving conveyor, because there is still a gap between the ladders on either side of the conveyor." Dissenting opinion at ¶ 65. But while it may be true that the handrails do not completely eliminate the risk of danger, there is no question that they were an available "alternative means of employee protection" that would have made crossing the conveyor substantially safer.

### *Conclusion*

{¶ 46} Because the handrails on the steps were a feasible "alternative means of employee protection," Whirlpool has not established an impossibility defense. I concur in the majority's judgment affirming the judgment of the Tenth District Court of Appeals.

———————————

**KENNEDY, C.J., dissenting.**

{¶ 47} Under Ohio's workers' compensation system, an injured worker may be entitled to additional workers' compensation payments as a penalty for his or her employer's violation of a specific safety requirement ("VSSR"). The former version of Adm.Code 4123:1-5-05(C)(3), which was in effect when appellee Keith Rice was injured, created such a specific safety requirement, providing that "[w]here employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided." 2015-2016 Ohio Monthly Record 2-4515 (effective June 1, 2016). This case presents the question whether it was possible for appellant, Whirlpool Corporation, to comply with former Adm.Code 4123:1-5-05(C)(3) by installing a platform with guardrails crossing over the conveyor line at issue in this case. In my view, because of the physical layout of Whirlpool's facility, it was not possible for it to comply.

{¶ 48} Since compliance with former Adm.Code 4123:1-5-05(C)(3) was impossible, I would reverse the judgment of the Tenth District Court of Appeals and grant Whirlpool's request for a writ of mandamus compelling appellee the Industrial Commission to vacate its finding of a VSSR. Because the majority does otherwise, I dissent.

**Facts and Procedural History**

{¶ 49} On November 28, 2017, Rice, working as a maintenance technician responsible for repairing broken equipment at Whirlpool's plant, was instructed by Whirlpool to repair several conveyor lines. While looking for the cause of a conveyor-line stoppage, Rice needed to cross over a running conveyor belt. However, the ceiling was so low that Rice had no bridge or elevated platform by which to cross the conveyor. Instead, there were two three-step ladders on each side of the conveyor with a conduit handhold to assist workers in crossing the conveyor. When asked if "a fixed platform over that conveyor . . . would make the whole operation impossible," Whirlpool's safety manager testified, "That's correct."

{¶ 50} Rice walked up the steps on one side of the conveyor and held onto the conduit handhold to cross over the conveyor. However, Rice stated that he "had to leap over the conveyor to get to the opposite side." As he did so, he tripped over an emergency-stop cord installed on the side of the conveyor and fell. The injury from his fall eventually required amputation of his leg above the right knee.

{¶ 51} Rice's workers' compensation claim was allowed, and he applied for a VSSR award based in part on Whirlpool's failure to provide railings at the conveyor crossing. A staff hearing officer at the Industrial Commission found that under former Adm.Code 4123:1-5-05(C)(3), Whirlpool was required to have *guardrails at the conveyor crossing* and that the failure to provide this safety feature was the proximate cause of Rice's injuries.

{¶ 52} Whirlpool sought a writ of mandamus in the Tenth District to compel the Industrial Commission to vacate the VSSR award. The Tenth District referred the matter to a magistrate, who recommended granting the writ, finding that under the regulation's text, the tops of the ladders were not platforms that required guardrails, because they did not cross the conveyor. 2024-Ohio-3252, ¶ 64 (10th Dist.). The Tenth District rejected the magistrate's recommendation to vacate the VSSR award. *Id.* at ¶ 10. Instead, it held that it was irrelevant that the tops of the ladders did not cross the conveyor, because the platform's purpose was to facilitate employees' crossing it. *Id.*

{¶ 53} Now, this court affirms the Tenth District's judgment, holding that the evidence shows that the tops of the ladders' steps were platforms and that it was possible for Whirlpool to comply with former Adm.Code 4123:1-5-05(C)(3). Majority opinion, ¶ 34, 38. The majority notes that Whirlpool subsequently *added handrails along the sides of the ladders* attached to the conveyor, showing that "Whirlpool clearly could have installed compliant railings without hindering the dryer machines' progress down the belt." *Id.* at ¶ 37. But as explained below, *handrails* on ladders are not *guardrails* attached to an elevated platform. And based on the layout of Whirlpool's facility, it was impossible to add an elevated platform and guardrails.

### Law and Analysis

{¶ 54} "'The [commission's] rules for specific safety requirements have the effect of legislative enactments' and therefore are 'subject to the ordinary rules of statutory construction.'" (Bracketed text in original.) *State ex rel. Parks v. Indus. Comm.*, 1999-Ohio-200, ¶ 12, quoting *State ex rel. Miller Plumbing Co. v. Indus. Comm.*, 149 Ohio St. 493, 496-497 (1948). So determining the meaning of former Adm.Code 4123:1-5-05(C)(3) requires this court to apply the principles of statutory interpretation. Therefore, when the regulation's language is plain and unambiguous and conveys a clear and definite meaning, we must apply it as written. *See Jones*

*v. Action Coupling & Equip., Inc.*, 2003-Ohio-1099, ¶ 12; *Summerville v. Forest Park*, 2010-Ohio-6280, ¶ 18. We consider each provision in context and apply ordinary rules of grammar. *See Ohio Neighborhood Fin., Inc. v. Scott*, 2014-Ohio-2440, ¶ 25.

{¶ 55} Recall that former Adm.Code 4123:1-5-05(C)(3) stated, "Where employees are required to cross conveyors, a fixed platform equipped with standard guard railing and toeboards shall be provided." 2015-2016 Ohio Monthly Record at 2-4515. A "platform" was a "working space for employees elevated above the surrounding floor or ground." Former Adm. Code 4123:1-5-01(B)(96), 2015-2016 Ohio Monthly Record 2-4496 (effective June 1, 2016). A "standard guard railing" was defined as "a substantial barrier, constructed in accordance with [former Adm.Code 4123:1-5-02(E)]." Former Adm.Code 4123:1-5-01(B)(131), 2015-2016 Ohio Monthly Record 2-4498 (effective June 1, 2016). And former Adm.Code 4123:1-5-02(E) required that a standard guard railing "be constructed as a substantial barrier, securely fastened in place, and free from protruding objects . . . which barrier shall consist of a top rail not less than forty-two inches above the working level, and unless the space between the top rail and the working level is covered with substantial material, an intermediate rail." 2015-2016 Ohio Monthly Record 2-4500 (effective June 1, 2016).

{¶ 56} Rice had to cross the conveyor where Whirlpool had erected the two ladders on each side of the conveyor. The majority focuses on the top steps of the ladders as being the "platforms" that were contemplated by former Adm.Code 4123:1-5-05(C)(3) as requiring the equipping of guardrails. But the top steps of ladders are not "platforms" that cross over the conveyor under former Adm.Code 4123:1-5-05(C)(3).

{¶ 57} The ladders were adjacent to the conveyor, while the regulation required platforms to be "[w]here employees are required to cross conveyors," former Adm.Code 4123:1-5-05(C)(3), 2015-2016 Ohio Monthly Record at 2-4515.

So while the tops of the ladders may have been platforms under the definition provided in former Adm.Code 4123:1-5-01(B)(96) as areas "elevated above the surrounding floor or ground," 2015-2016 Ohio Monthly Record at 2-4496, they were not the type of platforms required by former Adm.Code 4123:1-5-05(C)(3). If workers are required to cross conveyors, the employer must provide an elevated platform over the conveyor, and the platform must have guardrails. Adding railings to the sides of the ladders therefore would not bring Whirlpool into compliance with former Adm.Code 4123:1-5-05(C)(3), because neither the "platforms" nor the newly installed handrails on the ladders crossed the conveyor.

{¶ 58} As noted above, former Adm.Code 4123:1-5-05(C)(3) required Whirlpool to erect an elevated platform above and across the conveyor belt—in the regulation's words, "[w]here employees are required to cross conveyors," 2015-2016 Ohio Monthly Record at 2-4515—and that elevated platform had to be equipped with guardrails not less than 42 inches above the platform. However, it was impossible for Whirlpool to comply with these requirements.

{¶ 59} This court has recognized impossibility as a defense to a VSSR. *See State ex rel. Jackson Tube Serv., Inc. v. Indus. Comm.*, 2018-Ohio-3892, ¶ 26. Employers seeking to establish impossibility as an affirmative defense to a VSSR must show "(1) that it would have been impossible to comply with the specific safety requirement or that compliance would have precluded performance of the work and (2) that no alternative means of employee protection existed or were available." *Id.* at syllabus.

{¶ 60} The location where Rice was required to cross the conveyor belt is depicted in the picture below, which was included in Whirlpool's merit brief filed in the Tenth District:

21



There plainly was no space to erect an elevated platform crossing the conveyor. The ceiling is too low at this crossing point. One photo included in the parties' stipulation of evidence filed in the Tenth District shows this area after Whirlpool had taken remedial measures and shows the height of a person relative to the conveyor belt:



It is manifest that a person would be unable to walk across an elevated platform crossing the conveyor if one were built at this location. This is especially true when considering that fully assembled laundry dryers also must be able to pass under any elevated-platform crossing placed there. This picture, included by Whirlpool with its merit brief in the court of appeals, shows a boxed dryer passing along the conveyor:



As illustrated by this picture, the clearance between the ceiling and the box left too little space for a platform and would have precluded performance of the work.

{¶ 61} In addition, as noted above, former Adm.Code 4123:1-5-05(C)(3) required guardrails "[w]here employees are required to cross conveyors." 2015-2016 Ohio Monthly Record at 2-4515. That means that the guardrails had to cross the entire width of the conveyor. So even if the majority were correct that the top step of each ladder is a platform as contemplated by former Adm.Code 4123:1-5-05(C)(3), it was not possible to place guardrails at a height of 42 inches along with an intermediate rail under the low ceiling and above the conveyor. Again, fully assembled dryer machines had to pass along the conveyor. A guardrail would block them.

{¶ 62} The majority suggests that Whirlpool's subsequent remedial measures—the larger railings on each side of the ladders adjacent to the conveyor depicted in the picture above—would have complied with former Adm.Code

4123:1-5-05(C)(3). That is not true. Again, this regulation required an elevated platform and guardrails *crossing over* the conveyor. And these larger railings Whirlpool added to the ladders are not guardrails as contemplated by the former administrative code. This is simply an attempt to deny Whirlpool the benefit of the impossibility defense.

{¶ 63} Whirlpool also had to show that no alternative means of employee protection existed or were available in order for it to establish the impossibility defense. The majority points to the subsequent remedial measures that Whirlpool took as showing that "Whirlpool clearly could have installed compliant railings without hindering the dryer machines' progress down the belt." Majority opinion at ¶ 37.

{¶ 64} The majority wrongly penalizes Whirlpool for taking these subsequent remedial measures to protect workers like Rice. By finding that the ladders' new handrails show that a safe alternative to the required raised platform with guardrails existed, the majority's analysis runs counter to the evidentiary principle that encourages safety measures to be taken after an accident. *See* 2 McCormick, *Evidence*, § 267 (9th Ed. 2025).

{¶ 65} But in any case, the newly installed railings may make the ladders to the conveyor safer, but they do not remedy the hazard of crossing over a moving conveyor, because there is still a gap between the ladders on either side of the conveyor. Look again at the photo of a person on the top step of the ladder:



He plainly would not be able to grab onto the opposite handrail from his position atop the steps. The other ladder is more than two arm's lengths away. A worker crossing the conveyor would have to let go of the ladder's handrail, grab hold of the conduit, and reach across the conveyor to go from one ladder to the other while stepping onto the metal plates between the moving rollers. But stepping on those plates was itself hazardous; Rice testified at the hearing before the Industrial Commission that the plates were narrower than a pair of boots. In fact, Rice testified that he had to "leap across [the conveyor] to the other side."

{¶ 66} So while the majority suggests that the handrails on the ladders are a viable alternative to a raised platform with guardrails, those handrails do not eliminate the danger to workers that Rice faced as he transversed the conveyor before his injury.

{¶ 67} Whirlpool also took steps to protect employees like Rice before his injury occurred by installing a conduit handhold anchored to the ground next to the

steps on each side of the conveyor that ran above the conveyor. However, the staff hearing officer found that even with the conduit handhold in place, Whirlpool committed a VSSR. Consequently, the conduit handhold was not a viable alternative to erecting a raised platform with guardrails either.

{¶ 68} It therefore was not possible for Whirlpool to avoid the VSSR, given the physical layout of its facility and the nature of the work carried on at the conveyor crossing.

### Conclusion

{¶ 69} A VSSR award exists to ensure that employers provide safe workplaces for their employees. But here, the majority asks the impossible from Whirlpool when it upholds the VSSR award in favor of Rice when the conveyor crossing could not have been made any safer than it was on the day Rice was injured. Installing a raised platform with guardrails in a place where the ceiling dropped low over the conveyor was not possible. Therefore, I dissent and would reverse the Tenth District Court of Appeals' judgment and grant Whirlpool's request for a writ of mandamus to vacate the VSSR award.

_____

Bugbee & Conkle, L.L.P., Robert L. Solt IV, and Mark S. Barnes, for appellant.

Dave Yost, Attorney General, and Natalie J. Tackett, Assistant Attorney General, for appellee Industrial Commission of Ohio.

The Bainbridge Firm, L.L.C., Lauren N. Osgood, and Casaundra L. Johnson, for appellee Keith Rice.

_____